**UNITED STATES of America, Plaintiff,**

**v.**

**Venita J. COLEMAN, Deetra T. Kindle, Ella Simone Terrill, and Elana Roxanne Terrill, Defendants.**

**No. 88–00013–03/06–CR–W–JWO.**

United States District Court, W.D. Missouri, W.D.

Feb. 28, 1989.

---

Patrick Lysaught, Kevin Locke, Kansas City, Mo., for Elama Roxanne Terrill.

Linda L. Parker, U.S. Atty., for U.S.

James B. Jackson, Kansas City, Mo., for Ella Simone Terrill.

Leonard L. Meyer, Independence, Mo., for Deetra T. Kindle.

Ken Ferguson, Kansas City, Mo., for Venita J. Coleman.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' DECEMBER 8, 1988 MOTION

JOHN W. OLIVER, Senior District Judge.

### I

This case pends on the December 8, 1988 motion of defendants Venita J. Coleman,

Deetra T. Kindle, Ella Simone Terrill, and Elana Roxanne Terrill which prays in the alternative for this Court "(1) to enter its order directing the Government to file a motion pursuant to 18 U.S.C. [§] 3553(e) permitting the Court to consider imposition of a sentence below the statutory mandatory minimum sentence of one year required by 21 U.S.C. [§] 845a(a) or (2) to consider such imposition of a sentence below the statutory mandatory minimum notwithstanding the Government's failure to file such a motion pursuant to 18 U.S.C. [§] 3553(e)." [1]

Defendants' pending motion was filed in accordance with an order entered November 15, 1988 in which, pursuant to a conference held November 10, 1988, the Court approved the parties' agreement that "defendants shall, on or before December 8, 1988, prepare, serve, and file an amended motion to supersede defendants' pending motion filed July 11, 1988 together with suggestions in support thereof." Doc. # 43.

The files and records of this case reflect that defendants raised questions concerning Section 3553(e) on July 1, 1988, the day defendants were to have been sentenced. *See* July 1, 1988 transcript of proceedings at 1–5. Numerous orders were entered in regard to the questions presented in defendants' pending December 8, 1988 motion before counsel agreed that those questions should be determined on the basis of a stipulation of facts agreed to by the parties and filed November 9, 1988, together with

various supplemental affidavits that have been filed since that date.[2]

We have considered the undisputed factual circumstances stipulated by the parties, resolved any genuine issues of material fact presented by the various affidavits and documentary evidence, and find and conclude that defendants' pending December 8, 1988 motion should be granted for reasons that will be stated in detail.

## II

### A.

Defendants' pending motion and the government's suggestions in opposition to that motion may be utilized for the purpose of making some of the findings of the facts that are relevant and material in the determination of the questions presented in this case. Additional findings of fact will be made in later parts of this memorandum opinion.

On pages 2 to 9 of their pending motion (Doc. # 44), defendants set forth in fifteen separately numbered paragraphs the factual circumstances upon which they base their claim for relief. The portion of the government's January 18, 1989 suggestions in opposition entitled "FACTS" consists of a single sentence that states that the "facts of this case pertinent to the issues here presented are set forth in the attached Amended Affidavit, which is incorporated herein by reference." [3] Govt's Response filed Jan. 18, 1989 at 1.

---

**1.** 18 U.S.C. § 3553(e) (Supp.1988) provides:
**Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**2.** In order that the not uncomplicated procedural history of defendants' pending motion may be understood for purposes of possible appellate review, we incorporate by this reference the following orders entered after defendants raised

substantial questions concerning Section 3553(e) on July 1, 1988, the day on which they were to have been sentenced: July 1, 1988 order (Doc. # 22); July 22, 1988 memorandum and orders (Doc. # 29); August 11, 1988 memorandum and orders (Doc. # 32); August 22, 1988 memorandum and orders directing further proceedings (Doc. # 35); October 25, 1988 memorandum and orders directing further proceedings (Doc. # 38); and the November 15, 1988 order (Doc. # 43) mentioned in the text. Particular reference will be made to some of those orders in the text to follow.

**3.** The "attached Amended Affidavit," consisting of 18 pages, was executed by Assistant United States Attorney Linda L. Parker (hereinafter "Parker") on January 18, 1989. That amended affidavit added a substantial number of state-

In subpart II, B, to follow, we will treat the fifteen separately numbered paragraphs set forth in defendants' motion as defendants' proposed findings of fact. The findings of fact that we make will, however, reflect the modifications of particular paragraphs proposed by the defendants which will reflect this Court's findings of fact based on its independent consideration of the record.

In part III of this memorandum opinion we will discuss various statements contained in Parker's amended affidavit, which the government has adopted as its statement of the "facts in this case pertinent to the issues." Govt's Response at 1. That discussion will state the reasons why this Court may not properly base any findings of fact on particular portions of Parker's amended affidavit.

### B.

In accordance with what has been stated, we make the following findings of fact:

1. All four defendants were charged in the indictment with one count of conspiracy and at least one count of distribution of cocaine within 1,000 feet of a schoolyard in violation of 21 U.S.C. § 845a(a). In addition, the indictment charged Lloyd G. Haynes and Frankin Webster with various similar offenses. Haynes was also charged with operating a continuing criminal enterprise in concert with five other persons (Webster and the four defendants) in violation of 21 U.S.C. § 848. Upon arraignment, all defendants entered pleas of not guilty to all charges.

2. Counsel for all four defendants investigated the facts and circumstances of the charges, inspected the government's file materials on these charges, and conducted extensive interviews with their clients. Counsel for all four defendants engaged in plea negotiations with the government, which was represented by Assistant U.S. Attorney Linda Parker. During these negotiations, Parker made known her desire to have all four defendants testify against Haynes at trial. In return for their testimony and assistance, certain concessions by the government, including the dismissal of one or all of the pending counts against each of the four defendants, were discussed and considered.

3. Counsel for all four defendants were aware that the provisions of 21 U.S.C. § 845a(a) called for a mandatory minimum sentence of one year's imprisonment and that, pursuant to 18 U.S.C. §§ 3559 and 3561, probation was not a possible disposition of a charge under 21 U.S.C. § 845a(a), that offense being a Class B felony.

4. Counsel for all four defendants, upon being given authority from each of their clients, attempted initially to persuade Parker to dismiss all charges against their clients in return for their cooperation and testimony against Haynes. Given the magnitude of the charges against Haynes, and the government's need to prove a series of transactions involving five different persons to support its continuing criminal enterprise charge, defense counsel felt this was an appropriate disposition, especially given the lack of prior criminal involvement by four defendants, the fact that only small amounts of cocaine were sold by each defendant, and the fact that their testimony regarding their knowledge of Haynes and his activities would be revealing and extremely helpful to the government's case. Finally, such a disposition was extremely desirable in light of the one-year statutory minimum mandated by 21 U.S.C. § 845a(a). Nevertheless, Parker steadfastly refused to dismiss all charges against the four defendants in return for their testimony and cooperation.

5. As plea negotiations continued, Parker proposed a plea agreement in which each of four defendants would plead guilty to at least one count of distribution of cocaine within 1,000 feet of a schoolyard (21 U.S.C. § 845a(a)) and that the government would, for its part, seek dismissal of any other distribution counts as well as the conspiracy count against each defendant.

ments that Parker did not include in the 16–page affidavit that she executed on November 8, 1988 which is attached to the Stipulation of

Facts filed by the parties on November 9, 1988. Doc. # 35.

Counsel for several of the defendants urged Parker to consider allowing each defendant to plead to one count of some similar factually-supported offense which would not constitute a Class B felony and which would, at least, allow defense counsel for each defendant to argue that their clients should be placed upon probation rather than imprisoned. Suggested offenses were knowingly or intentionally using a communication facility in committing or causing or facilitating the commission of any drug offense (21 U.S.C. § 843(b)), or simple possession of a controlled substance (21 U.S.C. § 844). Again Parker steadfastly refused to amend any of the charges against the four defendants so as to allow them the opportunity to seek probation or a sentence of less than one year in return for their cooperation and testimony.

6. Though not initially, later in the course of plea negotiations, some of defense counsel discussed with Parker the provisions of 18 U.S.C. § 3553(e), which would allow the sentencing court, upon motion of the government, to consider imposition of a sentence below the mandatory minimum of 21 U.S.C. § 845a(a) in recognition of the defendants' substantial cooperation with the government in the prosecution of Haynes. Particular defense counsel requested Parker to commit the government to the filing of such a motion should the cooperation and assistance of the defendant they represented later prove to be substantial, and also sought to place a provision to that effect in the plea agreement.

7. Taking the latter request first, Parker categorically refused to place any such provision in the plea agreement.

8. With respect to counsel's request that the government commit itself to filing a motion pursuant to 18 U.S.C. § 3553(e) if the cooperation of the defendants proved to be substantial, Parker took different positions with counsel for each of the four defendants:

(a) Counsel for *Venita J. Coleman* were advised by Parker that it was the "policy" of the United States Attorney's office for the Western District of Missouri not to file motions pursuant to 18 U.S.C. § 3553(e); rather, the government would agree only to advise the court of the nature, extent and importance of the cooperation provided by each of the female defendants. Having so advised counsel for Coleman that no such motion would be filed by the government, regardless of the cooperation and assistance provided, Parker then informed counsel that a letter to the court describing the cooperation of Coleman would be sufficient basis for the court to consider imposition of a sentence below the mandatory minimum of 21 U.S.C. § 845a(a) in spite of the government's failure to file a motion seeking such consideration as required by 18 U.S.C. § 3553(e). Counsel for Coleman were skeptical of this interpretation, and asked Parker if she had any authority to support her position. She advised counsel that a recent California case of which she was aware had adopted such an interpretation of 18 U.S.C. § 3553(e). She advised counsel for Coleman that she would provide them with a citation and a copy of the opinion in that matter. Parker failed to do so. Subsequent inquiry by this Court established that no such case existed, either at the time Parker made her representation to defense counsel, at the time she made a like representation to this Court, or at any other time.

(b) Parker never advised counsel for *Deetra T. Kindle* that a motion pursuant to 18 U.S.C. § 3553(e) would not be filed by the government. Parker did, however, agree to advise the court of Kindle's cooperation. Parker did not mention the California case to counsel for Kindle.

(c) Parker advised counsel for *Ella Simone Terrill* that the filing of a motion pursuant to 18 U.S.C. § 3553(e) would be considered, depending upon, generally, factors including the nature and extent of Terrill's testimony at the Haynes' trial. There was no discussion of any policy against the filing of such motions. However, Parker did agree to advise the court of Terrill's cooperation; no mention of the California case was made.

(d) Counsel for *Elana Roxanne Terrill*, however, was advised by Parker of a policy against the filing of motions under 18 U.S.

C. § 3553(e) regardless of how valuable the cooperation of Terrill might be, and agreed only to advise the Court of the importance of Terrill's cooperation. No mention of the California case was made.

9. The negotiations between the government and all four defendants culminated in the execution of plea agreements by each of them and in the entry of various pleas of guilty by them in early March 1988. Due to the undersigned Judge's illness at the time the guilty pleas were made, they were entered before Judge Elmo B. Hunter, with the specific understanding on the part of all involved that the undersigned Judge would impose sentence upon the four defendants.

10. Following the entry of their pleas, each of the four defendants met at length, on several occasions, with agents of the Alcohol, Tobacco and Firearms Division, as well as with members of the Kansas City, Missouri Police Department Drug Enforcement Unit. During those discussions, each of the four defendants provided a wealth of information regarding the illegal drug activities of Haynes spanning the course of many years. Parker was present during all of those meetings.

11. Each of the four defendants testified against Lloyd Haynes as government witnesses during his trial. Parker was lead counsel for the government at that trial. The testimony of the four defendants consumed 298 pages of the trial transcript, and the verbatim testimony given by each defendant has been considered by this Court. The jury found Haynes guilty of six of the nine counts against him, including a conspiracy count involving all four defendants, as well as separate distribution counts involving the four defendants.

12. On May 3, 1988, Parker addressed virtually identical letters to this Court outlining the nature, extent and importance of the cooperation and assistance provided by each of the four defendants. The letters described that cooperation and assistance in glowing terms and are incorporated herein by this reference.

13. Following the testimony of the four defendants, Haynes' conviction, and the writing of the May 3, 1988 letters, counsel for all four defendants again urged Parker to file a motion pursuant to 18 U.S.C. § 3553(e) in light of her ability to then accurately assess the substantiality of cooperation and assistance provided by each of the four defendants, whom defense counsel believed were entitled to such consideration in light of the excellent cooperation they provided the government in its case against Haynes. Parker advised all counsel for the four defendants except Leonard Meyer, counsel for Kindle, that, in spite of the cooperation and testimony given by each of the four defendants, no motion pursuant to 18 U.S.C. § 3553(e) would be filed.

14. Leonard Meyer, counsel for Deetra Kindle, sent a letter to Parker on May 3, 1988 specifically requesting that she also file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines in light of Kindle's substantial cooperation. Although Parker stated in her January 18, 1989 amended affidavit that she made an oral response to that letter, we find that Parker never communicated with Meyer regarding his written request. Sometime in June 1988, Meyer again requested Parker, orally, to file a Section 5K1.1 motion, at which time Parker advised Meyer that she had not yet made a decision upon that request. Finally, on June 27, 1988 Meyer again wrote Parker a letter requesting the filing of a Section 5K1.1 motion, which also went unanswered by Parker. To date, Parker has not filed any such motion, either for Kindle or any of the other defendants.

15. Parker, in her initial affidavit executed November 8, 1988 and filed with this Court on November 9, 1988 (hereinafter "Parker's November 1988 affidavit"), stated she had been requested by defense counsel to file a motion pursuant to 18 U.S.C. § 3553(e) at the times above-stated, but that after she had considered "numerous factors," she decided "not to file the [Section 3553(e)] motion." Parker, however, refused to disclose "the factors considered [or] the processes followed in reaching the decision not to file the [Section 3553(e)]" under a purported claim of

Executive privilege. In her amended affidavit, filed January 18, 1989, however, Parker purported to disclose the reasons why she has consistently refused to file a motion under 18 U.S.C. § 3553(e).

The credibility of the statements made by Parker in her November 9, 1988 affidavit and the additional statements made in her January 18, 1989 amended affidavit will be resolved in part III of this memorandum opinion. We will also make additional findings of fact in later parts of this memorandum opinion which will resolve other disputed issues of fact.

## III

### A.

Although we made ultimate findings of fact in paragraph 8(a) of part II, B, above with respect to the representations Parker made to defense counsel and to this Court in regard to a decision made by an unidentified district judge in an unidentified California case, the importance of those representations and the circumstances under which they were made requires that we make additional detailed findings of fact concerning those representations.

We accordingly find that Parker conceded in her November 1988 affidavit that she had, in fact, represented to defense counsel during the course of the plea agreement negotiations that some unidentified district judge of some unidentified California district court had, in fact, held that a sentence below the mandatory minimum one-year sentence could be imposed in the absence of a Section 3553(e) motion being filed by the government. That Parker may have, in fact, made such a representation to defense counsel surfaced shortly after de-

fendants filed their initial motion on July 11, 1988.

Our July 22, 1988 memorandum opinion noted that both the defendants' brief in support of their July 11, 1988 motion (page 2) and the government's brief in opposition (page 3) made "reference to an unidentified 'California case' which was apparently processed in an unidentified 'district court in California.'" [4] Doc. # 29 at 1. We entered an order on July 22, 1988 which required the government to state "the citation of the California case to which reference was made." *Id.* at 2.

The memorandum and orders entered August 11, 1988 establish that Parker, in a response to this Court's July 22, 1988 order, represented to this Court that " 'the undersigned counsel has located the California case referred to by counsel in the pending motion and a copy is being sent by the Assistant United States Attorney handling the case in the Central District of California' " Doc. # 32 at 2 (quoting Govt's July 28, 1988 response). Parker advised this Court that "a copy will be forwarded to the Court and counsel upon receipt." *Id.*

On July 29, 1988 Parker filed a copy of the judgment and commitment order and a copy of the transcript of the sentencing hearing in *United States v. Sharp*, 684 F.Supp. 1506 (C.D.Calif.1988), with the Court. After our examination of those documents we made a finding in our August 11, 1988 memorandum opinion that the "record presently before the Court establishes that *United States v. Sharp* could not possibly have been the California case to which both sides made reference in their respective briefs." [5] *Id.* at 2.

---

4. Our July 22, 1988 memorandum specifically noted that the *"government's brief* states that Assistant United States Attorney Parker advised 'several of the defense counsel ... that 18 U.S.C. § 3553(e) allowed the court to go below the one year upon motion of the Government for substantial cooperation, *and advised that in one case, a district court in California reportedly had departed below the one year minimum mandatory without a motion from the Government.'"* (Emphasis added). *Id.* at 2.

5. Our August 11, 1988 memorandum opinion also rejected the government's "quid pro argument" (*id.* at 12–14) and its May 3, 1988 letters argument (*id.* at 14–16), both of which are repeated in the government's current brief, and afforded the government an opportunity to file a Section 3553(e) motion (*id.* at 17). The government's reiterated arguments in its brief filed January 18, 1989 are again rejected for the reasons stated in our August 11, 1988 memorandum opinion.

Parker's statement on page 5 of her November 1988 affidavit that she advised defense counsel during the plea negotiations that "she had recently seen a discussion in a newsletter or other publication regarding a case from a California district court, in which the district judge held that he was not bound by the Congressional mandate of minimum mandatory sentences set by statute and could depart absent motion by the Government" simply cannot be true. For it is obvious that no "newsletter or other publication" could write a synopsis of a case that that had not been decided.[6]

### B.

It is necessary that we make detailed findings of fact in regard to the questions Parker asked each of the defendants on direct examination at the Haynes' trial for the reason that those factual circumstances relate directly to the question of whether the plea agreements must be held to be ambiguous. We entered an order on August 22, 1988 directing the government to file on or before August 26, 1988 "copies of the entire testimony that each defendant gave at the trial of co-defendant Lloyd Haynes."[7] Doc. # 35 at 1. That order was entered for the reason the government has represented in its response to our August 11, 1988 order that the "defendants [at the trial of Lloyd Haynes] testified that they faced a one year mandatory sentence under the plea agreement; they did not express any expectation of further lenien-

cy." We find the transcript of defendants' testimony at the Haynes' trial, eventually produced by the government on October 25, 1988, establishes that none of the defendants, in fact, testified that they "faced a one year mandatory sentence under the plea agreement."

In regard to the issue of ambiguity, we find that the transcript establishes that the government's interrogation of each defendant was based on Parker's understanding that under the plea agreements, none of the defendants, in fact, faced a one-year mandatory sentence.

The transcript establishes that the four defendants were called as government witnesses at the Haynes' trial in the following order: Deetra Kindle (Tr. 84–162); Ella Simone Terrill (Tr. 162–246); Elana Roxanne Terrill (Tr. 247–301); and Venita Coleman (Tr. 494–579).[8] Inquiry was made by Parker at the close of each defendant's direct examination as to whether each defendant had entered her respective plea of guilty under a plea agreement with the government (Tr. 142—Deetra Kindle; Tr. 218–19;—Ella Simone Terrill; Tr. 280—Elana Roxanne Terrill; Tr. 548–49—Venita Coleman).

Rather than being asked whether they "faced a one year mandatory sentence under the plea agreement," as the government represented in its August 18, 1988 response to this Court's August 11, 1988

---

**6.** We were required to revisit our August 11, 1988 finding of fact in regard to Parker's inaccurate identification of the California case in our October 25, 1988 memorandum opinion. Doc. 38 at 4. We there stated that our August 11, 1988 finding of fact "will eventually be considered in light of the principle stated in *United States v. Shanahan,* 574 F.2d 1228, 1231 (5th Cir.1978), that stated that the obligations of a United States Attorney were aptly articulated over fifty years ago in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), and that what was said in *Berger* must necessarily extend to the enforcement of plea agreements which relate to the imposition of sentences. That finding of fact will also eventually be considered in light of the recognition stated in *United States v. Grandinetti,* 564 F.2d 723, 727 n. 1 (5th Cir.1977), that 'the government is charged with knowing the law, and the government's ignorance of it should not work to

the defendant's detriment.' " Those principles are still applicable.

**7.** An extension of time to comply with Order (1) entered August 22, 1988 was granted on August 24, 1988 at the government's request for the reason that the government stated that "the transcript [of the Hayne's trial] has not yet been prepared" (Doc. # 37 at 1) and because "[c]ounsel for all parties agree to confer for the purpose of trying to prepare a stipulation of facts upon which this matter can be submitted." Doc. # 37 at 2. The transcript was not filed until October 25, 1988. *See* page 2 n. 1 of our October 25, 1988 memorandum and orders directing further proceedings. Doc. # 38.

**8.** The transcript citations are to the transcript of the Haynes' trial which is attached as an exhibit to the parties' stipulation of facts. Doc. # 35.

order, the same pages of the transcript last cited establish that none of the defendants were asked such a question on either direct or cross-examination. Deetra Kindle was asked whether her "total exposure" under her plea agreement was "from 10 to 15 months." Tr. 142. Deetra Kindle testified on cross-examination that "I was told in the plea bargain that if I told what I know then my time would be lessened." Tr. 157.

Ella Simone Terrill testified on direct examination by Parker that under her plea agreement "the penalty to which [she] was exposed was 10 to 16 months." Tr. 219. The same thing was true in regard to the direct examination of Elana Roxanne Terrill. *See* Tr. 280–81. The following questions and answers were given by defendant Elana Roxanne Terrill at the close of her cross-examination:

Q. Yes. In addition to the benefit which you have already gained by having your penalty range reduced from 60 years to 10 to 16 months?

A. Uh-huh.

Q. You actually look, do you not, to spend no time in the penitentiary?

A. I would hope to.

Q. All right. And that is because of your cooperation in this case?

A. Yes.

Tr. 299–300.

Parker's direct examination of Venita Coleman followed the same "10 to 16 month" exposure pattern as that of Elana Roxanne Terrill. *See* Tr. 549. Venita Coleman testified on cross-examination that she agreed to the plea agreement because she "had no particular desire to go to jail." Tr. 576.

The transcript establishes that neither the government nor Haynes' counsel made any reference whatsoever to a mandatory minimum one-year sentence during their direct and cross-examination of any of the defendants. The testimony of the defendants at the Haynes' trial thus fails to support the government's representation made in its August 18, 1988 response that each defendant testified that "they faced a one year mandatory sentence under the plea agreements."

We accordingly find that the questions asked by Parker on her direct examination of each defendant at the Haynes' trial reflected her understanding that the defendants' plea agreements did not, in fact, subject any of the defendants to a mandatory one-year sentence. We further find in light of Parker's use of a sentence exposure of less than the minimum one-year mandatory sentence in her direct examination of each of the defendants requires and supports a further finding that each defendant reasonably understood that a sentence of less than the one-year minimum mandatory sentence could be imposed under the plea agreements.

We turn now to additional reasons why we must find and conclude that plea agreements must be held to be ambiguous.

C.

On page 5 of its opposition brief, the government attempts to argue that "[n]o ambiguity [was] created by the Government's agreement to 'advise the sentencing court of the nature, extent, and importance of the cooperation provided' by each defendant." That argument, however, is untenable for the reason that it is based on Parker's repeated statement that the plea agreements, in fact, provided that the government would "supply the Court with *a letter* describing the cooperation of each defendant." (Emphasis added). Govt's Brief at 11. Regardless of how many times the government attempts to have this Court read the plea agreements as providing that it would advise the court *by letter,* the fact remains that the plea agreements did not so provide.

Paragraph 9 of each defendant's plea agreement simply provided that the "United States will advise the sentencing court of the nature, extent, and importance of the cooperation provided by the defendant." In the face of what the plea agreements, in fact, provided in paragraph 9, Parker nevertheless made the following statement in both her 1988 affidavit and in her January 18, 1989 amended affidavit:

Your affiant agreed to advise the district court of defendant's cooperation *by letter,* which information could be used by the court to assess where defendant should be sentenced under the statute *and within the appropriate guideline range. This agreement became part of the written plea agreement.* (Emphasis added).

Parker's Amended Affidavit ¶ 6 at 6; ¶ 3 at 11; ¶ (e) at 14; ¶ (e) at 17.

Contrary to Parker's repeated statements, we find that no "part of the written plea agreement" contained a provision that the government "agreed to advise the district court of defendants' cooperation *by letter.*" The fact that Parker and the government would have this Court read the terms of the plea agreement as providing that the government would "advise the district court of defendant's cooperation *by letter,*" in spite of the fact the plea agreements do not so provide, requires that we find and conclude that the plea agreements are ambiguous.

We further find and conclude the failure of the government to include a clearly stated provision in the plea agreements that it drafted as to how its advice of defendants' cooperation was to be given also requires and supports our finding and conclusion that the plea agreements were and are ambiguous. For it is obvious that a letter from Parker, standing alone, could not be "used by the court to assess where defendant should be sentenced ... within the appropriate guideline range," as Parker stated in both her affidavits. An "appropriate guideline range" that would necessarily call for a sentence of less than the mandatory one-year minimum sentence could not be considered and imposed by the Court absent the filing of a Section 3553(e) motion by the government.

Any reasonable doubt about the ambiguity of the plea agreements is removed by Parker's repeated statement in regard to how the May 3, 1988 letters she wrote on behalf of each defendant should be treated. Both of Parker's affidavits contained the following statement in regard to the May 3,

1988 letters she wrote on behalf of each defendant:

> *In compliance with the terms of the plea agreement* ... your affiant advised the court *by letter* dated May 3, 1988, of defendant's cooperation. This information was *for the court's evaluation* in determining the appropriate sentence *under the Sentencing Guidelines* and the statute. (Emphasis added).

Parker's Amended Affidavit ¶ i at 8; ¶ i at 12; ¶ i at 15; ¶ i at 18.

Parker's repeated statements that her advice to "the court by letter dated May 3, 1988" was "[i]n compliance with the terms of the plea agreement" was obviously based on her understanding that the plea agreements did in fact provide that she would "advise the district court of defendants' cooperation *by letter.*" The plea agreements simply did not so provide.

We find and conclude that paragraph 9 of each plea agreement is ambiguous in light of Parker's repeated statements that she understood that she would act "in compliance with the terms of the plea agreement," if she did no more than advise the sentencing court of each defendant's cooperation "by letter." In spite of Parker's statement of her understanding of paragraph 9, neither that paragraph nor any other paragraph of the plea agreements so provided.

### D.

We further find that the statements Parker added to her November 1988 affidavit when she filed her amended affidavit on January 18, 1989 may not properly be considered as credible evidence. Parker's November 1988 affidavit, in describing the plea negotiations she had with Ferguson and York, counsel for defendant Coleman, simply stated that "Ferguson and York asked if your affiant would agree to file a motion under 18 U.S.C. § 3553(e) for sentencing below the minimum set in 21 U.S.C. § 845a; your affiant refused." Parker's Amended Affidavit at 3. That statement reflected Parker's flat refusal to even agree to file a Section 3553(e) motion re-

gardless of the extent of cooperation that Coleman might provide in the future.

Parker's January 18, 1989 amended affidavit, however, inserted the following statement to immediately follow what she stated in her original affidavit:

> Ferguson and York asked why not, to which your affiant answered that it was the policy of the office not to do so, that we were not to subvert or circumvent congressional intent, expressed in enacted law establishing minimum mandatory sentences for certain drug violations, by attempting to bind the courts to a lesser sentence than that mandated by Congress or by allowing a plea to a non-minimum mandatory sentence, if both were charged.

*Id.* at 4.

Parker further stated in a long footnote appended to that inserted statement that:

> This was not a policy formally adopted by the Department of Justice; it was announced at a staff meeting of the Drug Task Force by Robert E. Larsen, then Coordinator of the Drug Task Force and now First Assistant United States Attorney. It is consistent, however, with a policy statement from Department of Justice issued November 3, 1987 regarding the Sentencing Guidelines and the Principles of Federal Prosecution, Chapter 27, Title 9 of the United States Attorney's Manual, that prosecutors should charge the most serious offenses consistent with a defendant's conduct and a plea should be taken to the most serious offense or offenses charged that adequately and accurately describe the gravamen of defendant's conduct and which enables a court to impose the highest sentence provided in the Guidelines for the conduct committed. "The overriding principle governing the conduct of plea negotiations is that plea agreements should not be used to circumvent the Guidelines." In discussing departures from the normal sentencing range (18

U.S.C. § 3353(b) [sic] and Chapter 5 of the Guidelines), prosecutors "retain considerable discretion in making appropriate recommendations" as to the circumstances listed in Chapter 5, Part K of the Guidelines where the criteria are satisfied. This exercise of discretion was never precluded by the "policy" of the United States Attorney's Office for the Western District of Missouri, because Assistant United States Attorney's [sic] always had and have the right, duty and obligation to recommend a departure below a mandatory minimum sentence where deemed appropriate. However, the general rule was to not circumvent congressional intent; where departure was deemed appropriate, the Assistant United States Attorney was to discuss the matter with a supervisor.

*Id.*

Until Parker filed her amended affidavit on January 18, 1989, the government had adamantly refused "to delineate the reasons [why Parker] decided not to file [a Section 3553(e) ] motion" under an asserted claim of Executive privilege.[9] The statements Parker inserted in her January 18, 1989 amended affidavit, however, purports to state that Parker did, in fact, consider a "policy of the office" as the factor that controlled her decision not to file a Section 3553(e) motion. The credibility of Parker's statement in regard to that factor, for which no claim of Executive privilege is made, must be determined in light of what the record establishes in regard to Parker's knowledge and understanding of Section 3553(e) at the time the plea negotiations were being conducted and thereafter.

The affidavit of Claudia J. York and Kenneth D. Ferguson, Coleman's defense counsel, filed December 16, 1988, which we find to be credible, stated that "[o]n February 11, 1988 Ken Ferguson and Claudia York met with Linda Parker in her office to discuss the particulars of Ms. Coleman's

---

**9.** Parker repeatedly stated in her November 1988 affidavit that "[b]ecause the factors considered and the processes followed in reaching the decision not to file the motion are an exercise of the discretion vested in the Executive Branch by the Legislative Branch, the United States Attorney respectfully elects not to delineate the reasons for the decision." *Id.* at 7–8, 12, 15, 17–18.

guilty plea to one count in exchange for Ms. Coleman's cooperation and testimony against Mr. Haynes." York and Ferguson Affidavit at 2. That affidavit further stated:

Ken Ferguson and Claudia York indicated to Ms. Parker that they were seeking an opportunity to argue for probation for their client by requesting that she delete the section pertaining to distribution within 1,000 feet of a school. In response, Ms. Parker indicated there was a section of the new drug law which would allow defense counsel to argue for probation by requesting that the court sentence below a minimum mandatory sentence in cases where substantial cooperation was provided by the defendant. At that time Ms. Parker indicated that she did not know the citation of that section but that she had discussed the matter with Chris Harlan of the Federal Public Defender's office. She suggested that he knew the Section number and that we should call him.

Immediately following the meeting with Linda Parker on February 11, 1988, Claudia York contacted Chris Harlan of the Federal Public Defender's office to obtain the Section number allowing sentencing below a minimum mandatory upon substantial cooperation by a defendant. Chris Harlan indicated to Claudia York that he and Ms. Parker were referring to Title 18, U.S.C. § 3553(e) of the Anti–Drug Abuse Act of 1986.

Claudia York then reviewed the Code Section indicated by Chris Harlan and engaged in Westlaw research to obtain cases construing that section since its passage. Examination of Title 18 U.S.C. § 3353(e) [sic] indicated that a court could consider sentencing below a minimum mandatory sentence following substantial cooperation by a defendant *"upon motion of the government."*

....

At a [later] meeting with Linda Parker concerning the final specific terms of the agreement, Ken Ferguson and Claudia York pointed out to Linda Parker that Title 18 U.S.C. § 3553(e) required the government to make a motion before the court could consider a sentence below a statutory minimum following substantial cooperation by the defendant. Ms. Parker indicated surprise at this wording and counsel reviewed a copy of the Code Section at that time. When counsel for Venita Coleman requested that Ms. Parker agree to make a motion following the substantial cooperation of Ms. Coleman, they were informed that it was the policy of the United States Attorney's Office that no such motions be filed. Rather, Ms. Parker claimed that the policy was to write letters informing the court of a defendant's cooperation. At that time, counsel for Venita Coleman again indicated the desire to argue for probation on behalf of their client. It was at that time that Ms. Parker indicated that she had seen a recent case from the State of California which allowed the court the discretion to sentence below a statutory minimum in the absence of a motion filed by the government. The case cite was requested by Ms. Coleman's counsel and Ms. Parker indicated that she would obtain a copy of the case or a cite and provide it at a later date.

*Id.* at 3–4.

The York–Ferguson December 16, 1988 affidavit then stated that:

At the time the plea agreement was signed by Venita Coleman and counsel and the change of plea hearing occurred it was the understanding of Ken Ferguson and Claudia York that:

It was the policy of the United States Attorney for the Western District of Missouri that no motions would be filed in cases with mandatory minimum sentences and that only letters would be provided to advise the court of a defendant's cooperation.

That this policy was applied to the case involving Venita Coleman and that no matter how substantial her cooperation proved to be, Linda Parker would not file a motion which would allow the court to sentence below the minimum mandatory sentence for the charge to which Venita Coleman had agreed to plead guilty.

That counsel for Venita Coleman would be allowed to argue for probation in spite of the provisions contained in Title 18 U.S.C. § 3553(e) because of a recent case from California which would be provided to defense counsel prior to sentencing. That the same agreement was made with each of the four women defendants under the same policies and representations made to Ken Ferguson and Claudia York regarding Venita Coleman's case.

*Id.* at 4.

Parker's amended affidavit filed January 18, 1989 added new statements in direct response to the December 16, 1988 affidavit of York and Ferguson. Parker added the following to her November 1988 affidavit:

While your affiant cannot attest to what Ferguson and York understood, she can state:

(1) She never said that there would be no motions filed under § 3553(e), no matter what the circumstances. The question was never raised in the abstract, only in regards to the instant case.

(2) In regard to this case, she told Ferguson and York that she would not agree to include in the plea agreement a provision that the Government would file the motion. She further told Ferguson and York that because of Coleman's long-term involvement with Haynes' drug trafficking operation, she would not file the motion, that the congressionally-mandated one-year floor on the sentence was, in her opinion, very appropriate.

(3) She advised Ferguson and York that they of course could argue anything they wanted during allocution, and that a recent opinion from the Central District of California in Los Angeles held that a court could not be limited by congressionally-adopted minimum mandatory sentences. She specifically said she did not agree with the California opinion, felt

it was wrong and would not stand, and felt a Government appeal was likely.

Parker's Amended Affidavit at 8–9.

On January 26, 1989, York and Ferguson filed an additional affidavit "to rebut certain facts contained in the Amended Affidavit of Linda Parker" filed January 18, 1989. Add'l Affidavit of York & Ferguson at 1. That affidavit stated that:

During the plea negotiations with Assistant United States Attorney Linda Parker, after learning that a motion by the government pursuant to § 3553(e) was required before the Court could consider a sentence below a statutory mandatory minimum, Coleman's counsel asked Parker to agree to consider filing such a motion as part of the plea agreement with defendant Coleman. Parker informed Coleman's counsel that, since § 3553(e) was relatively new, it was office policy that no plea agreements would be made which would include the government's agreement to consider filing such a motion. Linda Parker informed Coleman's counsel that the best she could do was to agree to write a letter to the Court advising the Court of the nature and extent of the defendant's cooperation, which was a continuation of the office policy as it existed prior to the enactment of Title 18 U.S.C. § 3553(e).

*Id.* at 1–2.

The January 26, 1989 York–Ferguson affidavit further stated that the "explanation of policy now provided by Parker in her Affidavit was not provided to Coleman's counsel during the plea negotiations and, in fact, Parker's present Affidavit is the first time that Coleman's counsel has been informed of those reasons." *Id.* at 2. That affidavit also stated that "Kenneth D. Ferguson and Claudia J. York indicated all through the plea negotiations that their primary goal in the plea negotiations in representing their client was to obtain the opportunity to argue for probation. Ferguson and York entered into the plea negotiation with the understanding that there would be some way to do this." [10] *Id.* at 2.

**10.** Additional information was stated in paragraph 4 of the January 26, 1989 York–Ferguson affidavit in regard to the California case to which Parker, once again, made reference in

her January 18, 1989 amended affidavit. That paragraph stated: "When Parker indicated to Coleman's counsel that it was office policy to agree to write a letter, Coleman's counsel indi-

We find that the statements made in the York–Ferguson affidavits quoted above accurately reflect the factual circumstances. We further find that any statements to the contrary made in Parker's January 18, 1989 amended affidavit must be found to be not credible.

Our resolution of the credibility issue presented in favor of the statements made in the York–Ferguson affidavits and against those stated in Parker's January 18, 1989 amended affidavit is not based solely on what York and Ferguson stated in regard to the representations that Parker made to them. For Kevin Locke, Elana Roxanne Terrill's defense counsel, also filed an amended affidavit on January 27, 1989 in response to the Parker's January 18, 1989 amended affidavit.

Locke stated on page 3 of his January 27, 1989 amended affidavit that he had, as had York and Ferguson, "engaged in all my plea negotiations with the government under the impression that the U.S. Attorney had a policy against filing motions pursuant to 18 U.S.C. 3553(e)." He added that "[a]s I understood that policy, it absolutely prohibited the U.S. Attorney's Office from even considering the possibility of filing motions pursuant to 18 U.S.C. 3553(e); it was never explained to me, nor to any other defense counsel to my knowledge, that, as the Government now asserts, the policy was flexible and allowed the filing of motions under 18 U.S.C. 3553(e) 'under appropriate circumstances.'" *Id.* We find Locke's statements of fact to be credible and that Parker's statements to the contrary are not.

### E.

We find that Parker's statement on page 4 of her January 18, 1989 amended affidavit that she told Ferguson and York

that her refusal to agree to file a Section 3553(e) motion was based on a "policy of the office ... not to subvert or circumvent congressional intent, expressed in enacted law establishing minimum mandatory sentences" is incredible for the reason that Congress had enacted legislation in 1986 that reflected its intent that continued recognition and application of minimum mandatory sentences would be inconsistent with the declared purpose of the Sentencing Reform Act of 1984 to avoid disparity in the imposition of sentences. It is inconceivable that the United States Attorney's office would adopt a "policy" in direct conflict with the following statutes enacted by the Congress in 1986.

What is now 18 U.S.C. § 3553(e) and what is now 28 U.S.C. § 994(n) were simultaneously enacted by the Congress on October 27, 1986 as Title I, § 1007(a) and § 1008(1), respectively, of Public Law 99–570 (*see* 18 U.S.C. § 3553(e), 1988 Supp. at 19, and 28 U.S.C. § 994, 1988 Supp. at 288, respectively). Both statutes were designed to provide the manner in which the disparities created by the imposition of mandatory minimum sentences were to be avoided. Both statutes reflect a congressional intent directly contrary to Parker's statement that the imposition of anything other than "minimum mandatory sentences [would] subvert or circumvent congressional intent."

For the first sentence of Section 3553(e) conferred authority on a district court, upon motion of the government, to impose a sentence below a statutory minimum sentence. Significantly, Congress added a sentence to that section that "[s]uch [a lower sentence] shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commis-

cated concern that the failure of the government to agree to consider filing a motion pursuant to § 3553(e) would prevent them from arguing for a sentence of probation for their client. At that time, Linda Parker told Coleman's counsel that she had read about a case from California in which the Court allowed defendant's counsel to argue for a sentence below a statutory minimum in the absence of a motion from the government. At that time, Parker indicated that

she would argue against probation because she thought incarceration was appropriate in this case. However, she did not state, as she now claims, that she would argue against a similar ruling by this Court which would allow Coleman's counsel to argue for probation. In fact, Linda Parker stated that, as a practical matter, if probation were granted, the government would not appeal the sentence."

sion pursuant to section 994 of title 28, United States Code."

Section 994(n) reflected Congress' hostile, rather than its favorable view of mandatory minimum sentences, as stated by Parker in her January 18, 1989 amended affidavit. For the Congress imposed the following mandatory duty on the Sentencing Commission when it enacted that section in 1986:

The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.[11]

Consistent with the mandatory duty imposed upon it by Congress in Section 994(n), the Commission promulgated Section 5K1.1 as the Guideline policy statement that permits a lower departure from the sentences otherwise provided by statute or by other guideline sections. The Commission stated in its commentary to that policy statement that under the "circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), as amended, substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence."[12] The two statutes enacted by Congress in 1986 and Section 5K1.1

promulgated pursuant to those statutes, clearly contemplate that the sentencing court may be authorized to make a lower departure from the Guidelines and consider a sentence below a mandatory minimum sentence. In determining what lower sentence should be imposed under such a circumstance, it is also clear that the sentencing court may consider the imposition of a sentence of probation or a term of supervised release as that new sentencing alternative is defined in Section 5D3.1(b) of the Guidelines.

We find that Parker was not familiar with Section 3553(e), with Section 994(n), or with Section 5K1.1's lower departure policy statement at the time she commenced her plea agreement negotiations with defense counsel to obtain the cooperation of the defendants in prosecution of Haynes. We further find that her understanding of a "policy" of her office was based on the untenable premise that the Congress had, in fact, expressed a "congressional intent" that the district courts should be required to impose mandatory minimum sentences regardless of the circumstances of a particular case. It is our view that Congress' enactment of Section 3553(e) and Section 994(n) in 1986 reflected a directly contrary intention.

### F.

In footnote 1 on page 4 of her January 18, 1989 amended affidavit, Parker candidly stated that what she described as "the policy of the office," was not, in fact, "a

---

**11.** The disparity problem created by the imposition of a mandatory sentence on a defendant who, in fact, rendered substantial assistance to the government was recognized at the time the Sentencing Reform Act of 1984 was enacted by Congress. Senator Edward M. Kennedy, cosponsor of that Act, made this clear in his November 10, 1988 statement on the floor of the Senate criticizing the mandatory sentence provisions enacted by the Congress in the Omnibus Anti–Drug Abuse Act of 1988 (Pub.L. 100–690). *See* reprint of that statement in Vol. 1, No. 7, *Federal Sentencing Reporter* 350). Senator Kennedy stated that "mandatory minimum penalty statutes appear to be inconsistent with the guidelines system" and added that:

This is precisely the injustice we sought to eliminate in 1984. As we said in the commit-

tee report accompanying the Sentencing Reform Act: "The Committee generally looks with disfavor on statutory minimum sentences to imprisonment, since their inflexibility occasionally results in too harsh an application of the law and often results in detrimental circumvention of the laws. (S.Rep. 225, 98th Cong., 1st sess. 89, fn. 194 (1983))."

See also the statements of Senator Thurmond and Representative Conyers cited on the same page of the *Federal Sentencing Reporter.*

**12.** The Commission also stated in its commentary to that section that a "defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor." *Sentencing Guidelines Manual* at 5.35.

policy formally adopted by the Department of Justice." She represented, however, that "the policy of the office" that she described was, in fact, "consistent ... with a policy statement from Department of Justice issued November 3, 1987 regarding the Sentencing Guidelines and was also consistent with the Principles of Federal Prosecution, chapter 27, Title 9 of the United States Attorney's Manual."

On January 31, 1989 we entered an order that required production of the "policy statement from [the] Department of Justice" to which Parker made reference in footnote 4 of her January 18, 1989 amended affidavit. Doc. #51. The government produced a "MEMORANDUM" dated November 3, 1987 to "All Litigating Division Heads and All United States Attorneys" from Associate Attorney General Stephen S. Trott, entitled *Interim Sentencing Advocacy and Case Settlement Policy Under New Sentencing Guidelines.*[13] Memorandum at 1.

The Associate Attorney General's interim memorandum contains no reference whatsoever to Section 3553(e) or to Section 994(n). We find that what was stated in that interim memorandum is not, in fact, "consistent with a policy ... announced at a staff meeting of the Drug Task Force" as Parker stated in her footnote 1 on page 4 of her amended affidavit. Indeed, we further find that what little was stated in regard to "Permitted plea agreements" on page 6 of that interim memorandum is inconsistent with and directly contrary to Parker's understanding of the policy stated in that interim memorandum.

Associate Attorney General Trott advised all United States Attorneys that "an attorney for the Government may enter into a plea agreement which includes the dismissal of any charges or an agreement not to pursue potential charges [and which would provide for] an applicable downwards departure from the Guidelines based on a factor set forth in Chapter 5, Part K1.1 or 2, of the Guidelines."[14] *Id.* at 6.

Parker's representation that the "policy" that she said she followed was "consistent with ... the Principles of Federal Prosecution, Chapter 27, Title 9 of the United States Attorney's Manual" must be summarily rejected for the reason the Manual contains no reference whatsoever to Section 3553(e), to Section 994(n), to the Sentencing Reform Act of 1984 or to the Guidelines promulgated by the Commission.[15] We turn now to the legal arguments made by the government in its brief in opposition to defendants' December 8, 1988 motion.

**IV**

**A.**

The government again presents its "quid pro quo" argument and its May 3, 1988 letters argument in its brief in opposition to defendants' pending motion. As we have stated in footnote 5, we concluded

---

**13.** That document shows that it was distributed three days after the November 1, 1987 effective date of the Guidelines and that it stated "[o]ver the course of the next few months, we will be studying the implementation of the Guidelines to determine more precisely what charge and plea policies need to be adopted to insure that the spirit as well as the letter of the Guidelines are fulfilled." Memorandum at 3. Associate Attorney General Trott also stated: "I commend to your attention the Prosecutors Handbook on Sentencing Guidelines which is being distributed by the Criminal Division." *Id.* at 10.

The government has not produced any later memorandum circulated by the Department of Justice in regard to the Guidelines. Nor has it produced a copy of the Prosecutors Handbook on Sentencing Guidelines that Associate Attorney General Trott stated was being distributed by the Criminal Division.

**14.** The statement that a "downwards departure" could be authorized under *either* Section 5K1.1 *or* Section 5K1.2 is obviously inaccurate. Section 5K1.1 is the only section in which a "downwards departure" is authorized. Section 5K.2 sets forth fifteen separate policy statements under which upward departures may be authorized. *See* Section 5K2.0 to 5K2.14, inclusive.

**15.** Indeed, the Manual shows on its face that it was originally published during the administration of Attorney General Benjamin N. Civiletti on July 20, 1980, that substantial revisions were made as of June 15, 1984, but that the latest three-page revision was made July 1, 1985, long before the enactment of statutes cited in the text and long before the Commission Guidelines were promulgated in October 1987.

that both those arguments are untenable for the reasons stated in detail in our August 11, 1988 opinion. That memorandum has been incorporated by reference. Further discussion of those arguments would be redundant.

Under our view of the pending motion, it is not necessary that we reach the government's argument made in part II of its brief which contends that "the failure of the government to file a motion pursuant to § 3553(e) is not an abuse of prosecutorial discretion." For we need only reach the question of whether the plea agreement must be held to be ambiguous. We turn now to that question.

## B.

The principles of law that must be applied in the determination of whether the plea agreements must be held to be ambiguous and how ambiguous plea agreements must be construed are not in substantial dispute. A number of the applicable cases have already been cited and discussed in our October 25, 1988 memorandum opinion. The cases there cited and discussed were *United States v. Grandinetti*, 564 F.2d 723, 727 n. 1 (5th Cir.1977), ("the government is charged with knowing the law, and the government's ignorance of it should not work to the defendant's detriment"); *United States v. Runck*, 601 F.2d 968, 970 (8th Cir.1979), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980) (the "law is settled that breach of a plea bargain requires permitting the defendant to plead anew or demand specific performance") (citing the leading case of *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)); *United States v. McGovern*, 822 F.2d 739, 743 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct.

352, 98 L.Ed.2d 377 (1987) (a plea agreement "is not simply a contract between two parties" for the reason a plea agreement "necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement"); [16] and *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) ("both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in plea agreements").[17]

In addition, our analysis must be made in accordance with the principle stated in *United States v. Cook*, 668 F.2d 317, 321 (7th Cir.1982), that the "Government may not rely on favorable judicial construction to cure significant ambiguities in its plea agreements." *United States v. Harvey, supra*, concluded, we believe correctly, that the question of "whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law." 791 F.2d at 300. The *Harvey* court also concluded that if a particular provision in a plea agreement is found to be ambiguous, such a provision must be read against the Government. *Id.* at 303.

*United States v. Carbone*, 739 F.2d 45, 47 (2d Cir.1984), cited with approval by the Eighth Circuit in *United States v. McCray*, 849 F.2d 304, 305 (8th Cir.1988), also makes clear that in "determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" 739 F.2d at 46 (quoting from *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir.1982) (per curiam),

16. *McGovern* was most recently cited with approval by the Eighth Circuit in *United States v. Johnson*, 861 F.2d 510 (8th Cir.1988), in which the rationale of *McGovern* was applied to a pre-indictment cooperation—immunity from prosecution agreement.

17. In footnote 4, page 8 of our October 25, 1988 memorandum opinion, appended to our discussion of *Harvey* we cited: *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978) (plea agreement not appropriate context for "rigidly literal"

construction of language); *Palermo v. Warden*, 545 F.2d 286, 295 (2d Cir.1976) (government invocation of restrictive contract principles "disingenuous"); *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976) (government's "strict and narrow interpretation of its commitment ... untenable"); and *Correale v. United States*, 479 F.2d 944, 947 (1st Cir.1973) (government held to "meticulous standards of both promise and performance").

*cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983)).

Having stated the applicable principles of law relating to the ambiguity of a plea agreement, we turn now to the plea agreements involved in this case.

### C.

■ Each of the plea agreements, which contain substantially the same language, was drafted by the government and, if ambiguous, must accordingly be read against the government. Confusion as to how the plea agreements should be read was introduced at the time the government drafted the plea agreements for the reason the government erroneously stated that the parties had entered into a "plea bargain pursuant to Rule 11(e)(1)(C), Federal Rules of Criminal Procedure."[18] The plea agreements involved in this case simply did not provide that the court would be bound to impose a "specific sentence." Rather, the plea agreements show on their face that the government agreed that it would "move for dismissal of other charges," as authorized by subparagraph 1(A) of Rule 11(e), in consideration of the cooperation that each of the defendants agreed to provide in the future, as detailed in paragraph 7 of each of the plea agreements.[19]

Paragraph 2 of each plea agreement merely recited each defendant's *"potential* criminal exposure as a result of her guilty plea." (Emphasis added). That paragraph accordingly set forth each defendant's *po-*

*tential* exposure as provided by statute, namely: "A. Incarceration: not less than one (1) year, not more than forty (40) years." Paragraph 9 of each plea agreement, however, stated in what we find and conclude was ambiguous language that the "United States will advise the sentencing court of the nature, extent, and importance of the cooperation provided by the defendant."

Paragraph 9 obviously failed to state the manner in which the government would undertake to "advise the sentencing court of the nature, extent, and importance of the cooperation" that a defendant might in the future provide in accordance with paragraph 7 of each plea agreement. Certainly the parties did not, as we have found, agree that the government would provide that advice "by letter."[20]

The presentence reports and the sentencing recommendations filed with this Court by the Probation Office after Parker had written her May 3, 1988 letters,[21] properly directed attention to the fact that each defendant's "potential criminal exposure" would not necessarily require the imposition of a sentence of "incarceration: not less than one (1) year." For whether such a sentence would be imposed was dependent upon the manner the government complied with its obligation to "advise to the sentencing court of the nature, extent and importance of the cooperation provided by the defendant" as the parties agreed in paragraph 9 of each plea agreement.[22]

---

**18.** Subparagraph 1(C) of Rule 11(e) contemplates an agreement by the parties "that a specific sentence is the appropriate disposition of the case."

**19.** Paragraph 7 of each of the plea agreements provided in part that each defendant "agrees to provide truthful, full and complete cooperation to the United States, including federal and state law enforcement authorities, concerning drug trafficking and other matters. Such cooperation will include interviews and testimony before grand and petit juries, as needed."

**20.** The government contends that paragraph 9 of each plea agreement obligated the government only to write the May 3, 1988 letters that it wrote after the completion of the Lloyd Haynes'

trial. The defendants, of course, contend that paragraph 9 must be given a much broader meaning.

**21.** The presentence report and sentencing recommendation of Venita J. Coleman were dated May 19, 1988; the presentence reports and sentencing recommendations of the other three defendants were dated May 25, 1988.

**22.** Each sentencing recommendation properly advised the Court that "[p]ursuant to 18 U.S.C. § 3553(e), the Court has limited authority to impose a sentence below a statutory minimum, although same would have to be based upon a motion of the government reflecting substantial assistance in the investigation or prosecution of another person."

The plea agreements drafted by the government do not even so much as mention Section 3553(e). Nor do the plea agreements state whether the government would or would not file a Section 3553(e) motion. Indeed, the evidentiary data before the Court establishes that the responsible Assistant United States Attorney entertained the inaccurate view that the filing of a Section 3553(e) by the government was not necessary in order to vest this Court with authority to impose a sentence below the mandatory one-year sentence. We have found that Parker erroneously represented to defense counsel and later to this Court that a case decided in a California district court supported that view of the applicable law.

We find and conclude that the failure of the government even to mention Section 3553(e) and its failure to state whether it would or would not file a motion under that section renders the plea agreements that it drafted ambiguous on their face. We further find and conclude that the construction that the government placed on the plea agreements that it drafted establishes that the manner in which the defendants understood the ambiguous language of the plea agreements was reasonable under the circumstances and that the construction that the government contends should be given the ambiguous language is not reasonable.

### D.

■ Determination of how the ambiguous plea agreement must be read is not a difficult task under the factual circumstances of this case. For the government represented to defense counsel that under the decision of the district judge in a nonexistent California case defense counsel would be able to argue that this Court was authorized to impose a sentence lower than the minimum one-year mandatory sentence even if the government should refuse to file a Section 3553(e) motion. In addition, the government's direct examination of each of the defendants at the Haynes' trial established that the government placed a construction on each of the plea agreements that reflected the government's understanding that the plea agreements in fact authorized the imposition of a sentence lower than the mandatory one-year minimum sentence.

The evidence also established that the government was laboring under the erroneous legal theory that Parker's May 3, 1988 letters could and would serve the same purpose as that which would be served by the filing of a Section 3553(e) motion and that, under a non-existent California case, each defendant would, in fact, be able to argue that each defendant could and should be placed on probation rather than being required to serve a mandatory one-year minimum sentence.

The government's own construction of the plea agreements that it drafted obviates the necessity of entering any order directing the government to file a set of Section 3553(e) motions. For it is only necessary that we treat Parker's May 3, 1988 letters in the same manner as the government elected to treat those letters, namely, as the functional equivalent of Section 3553(e) motions filed in regard to each of the defendants.[23]

■ Nor is it necessary that we enter an order that would require the government to file a separate Section 5K1.1 motion in order to authorize a departure from the Guidelines. We do not believe that the government need file two separate motions, one under Section 3553(e) and another under Section 5K1.1, in order to advise

---

**23.** This Court is not the first court to treat a government filing as the functional equivalent of a departure motion. For in *United States v. Campbell,* 704 F.Supp. 661 (E.D.Va.1989), Judge Ellis of the Eastern District of Virginia, noted that the "defendant seeks a departure ... from the applicable Guidelines pursuant to section 5K.1" and that the "government supports the defendant's departure request." Judge Ellis' opinion does not indicate how the government had stated its support. He simply held that "the government has, *in effect,* moved the Court for a departure" (emphasis added) and granted a downward departure based on the defendant's substantial assistance from a 78 to 97–month guideline range by the imposition of a 14–month sentence to be followed by five years of supervised release, during which the defendant would render 300 hours of community service.

the Court that a particular defendant has, in fact, provided "substantial assistance [to the government] in the investigation or in the prosecution of another person who has committed an offense."[24]

■ Our treatment of the May 3, 1988 letters as a functional equivalent of a Section 3553(e) motion requires that an order be entered granting defendants' motion. For we find that each of the May 3, 1988 letters accurately detailed the nature, extent, and importance of the cooperation provided by each defendant. We further find that the government's evaluation of each defendant's cooperation in the concluding paragraph of each letter is fully supported by the record.[25]

We find that Parker's detailed statements in regard to the nature, extent, and importance of the cooperation extended by each of the defendants and her detailed evaluation of that cooperation as contained in her May 3, 1988 letters, when considered in light of the testimony of each defendant at the Haynes' trial and the information in the presentence reports, requires that we find and conclude that each of the defendants by their cooperation provided "substantial assistance" to the government within the meaning of Section 3553(e). Accordingly, an order will be entered granting what will be treated as the functional equivalent of a Section 3553(e) motion.

## V

For the reasons stated, it is

ORDERED (1) that defendants' December 18, 1988 motion should be and the same is hereby granted. It is further

ORDERED (2) that Parker's May 3, 1988 letters should be and are hereby treated as the functional equivalent of Section 3553(e) motions filed by the government on behalf of each of the defendants and that as so treated, the same should be and are hereby granted. It is further

ORDERED (3) that the Probation Office shall promptly prepare and submit to this Court a confidential supplemental recommendation in regard to what sentences should be imposed with respect to each defendant. Those confidential supplemental recommendations shall be based on the recognition that Parker's May 3, 1988 letters have been treated as motions filed by the government pursuant to 28 U.S.C. § 3553(e) and pursuant to Section 5K1.1 of the Guidelines and that such motions have been granted.

The Probation Office shall also advise the Court in each confidential supplemental recommendation in regard to (a) what weight, if any, should be given the fact that each defendant has been under the supervision of Pretrial Services for exceptionally lengthy periods of time; (b) the performance of each defendant while under Pretrial Services' supervision; (c) how the factors set forth in Section 5K1.1 of the Guidelines should be applied in regard to each defendant; and (d) any other factor that the Probation Office believes the

**24.** Section 3553(e) and Section 5K1.1 both contain the language quoted in the text. We cannot think of any reason why the government should be required to file two, rather than a single motion in order to advise the sentencing court whether a particular defendant has, in fact, rendered "substantial assistance" in a particular case. A different case would, of course, have been presented if the defendants in this case were not subject to a mandatory minimum sentence. For in such a case the government would need only to file a Section 5K1.1 motion in order to authorize a departure from the Guidelines. When, however, as in this case, a mandatory minimum sentence is involved, the authority to impose a lesser sentence than the statutory minimum must be conferred on the sentencing court by the filing of a Section 3553(e) motion or by filing some document that

may propeerly be considered the functional equivalent of such a motion.

**25.** In the concluding paragraphs of each of the May 3, 1988 letters, Parker stated, among other things, that each defendant had, in fact, "satisfied the terms of the plea agreement" and that "her testimony was important." We summarily reject Parker's effort to somehow qualify her May 3, 1988 evaluation by stating on page 1 of her January 11, 1989 amended affidavit that the "cooperation subsequently provided by defendants under plea agreements, while helpful, was not 'crucial' to obtaining a conviction against Haynes." The question under Section 3553(e) is not whether a defendant's cooperation was "crucial"; the question is whether that cooperation was of "substantial assistance in the ... prosecution of another person."

Court should take into consideration in determining the sentences to be imposed.

The Probation Office shall consider probation and supervised release as available sentencing alternatives in making its recommendations to the Court. It is further

ORDERED (4) after the Court has considered the confidential supplemental recommendations filed by the Probation Office pursuant to Order (3), it will enter an order that will set the date that each defendant will be sentenced.