UNITED STATES of America

v.

Gregory Mark CAMPBELL, Defendant.

Crim. No. 88–00203–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 26, 1989.

Kathleen Tutty, Sp. Asst. U.S. Atty., Kenneth Melson, First Asst. U.S. Atty., Alexandria, Va., for U.S.

Plato Cacheris, David S. Krakoff, Dunnells, Duvall, Bennett & Porter, Washington, D.C., for defendant.

## FINDINGS AND REASONS ON SENTENCING

ELLIS, District Judge.

Defendant is before the Court for sentencing after pleading guilty to a charge of conspiracy to possess with the intent to distribute 500 grams or more of a mixture and substance containing cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, U.S.C., Section 841(a)(1). Pursuant to 18 U.S.C. § 3553, the Court sets forth here its findings and reasons in

connection with the sentence imposed. Also included is the Court's resolution of the somewhat novel question presented, namely whether the mandatory minimum five year sentence prescribed for certain offenses under 21 U.S.C. § 841 applies also to conspiracy violations involving the same offenses under 21 U.S.C. § 846, the latter provision being itself silent on the issue.

The presentence investigation report, which is uncontested by the parties, describes the circumstances of the offense. In essence, the report reflects that defendant, in August 1988, became involved for the first time in drug trafficking. Specifically, he undertook to assist two experienced drug traffickers in their effort to locate a local, Washington, D.C. cocaine source. Apparently, the drug dealers' customary Florida cocaine supply source was no longer satisfactory. In the effort to locate a local cocaine source, defendant met with a man known to him as "Omar," who was in fact a Drug Enforcement Administration (DEA) agent acting in an undercover capacity. The agent offered to meet with the defendant and the two drug dealers for the purpose of negotiating the sale of two (2) kilograms of cocaine. The meeting took place at a restaurant in Northern Virginia. A price of $20,000 per kilogram of cocaine was negotiated. A time and place the following day were set to consummate the deal. At the appointed time and place, the defendant and the two drug dealers were arrested in the course of consummating the deal.

Defendant promptly confessed his guilt, accepted responsibility for his involvement in the conspiracy and cooperated with the authorities. He pled guilty to the conspiracy charge and provided the government with the information that led ultimately to the guilty pleas of the two drug traffickers.

At the time of the plea, the Court ordered the preparation of a presentence investigation report (PSI). Pursuant to the Court's local rules and procedures, the parties were given ample time to review the PSI and to note any corrections or objections. None were noted; the parties concurred in the facts and circumstances set forth in the PSI and in the report's conclusions under the *Sentencing Guidelines*. Accordingly, the Court adopts the findings and conclusions of the PSI report as its findings and conclusions in this sentencing proceeding and further Orders that the PSI report, excepting any confidential recommendation, be placed under seal and made a part of the record in this proceeding.[1] Accordingly, with respect to various *Sentencing Guidelines* computations, the Court concludes as follows:

1. The defendant's adjusted offense level is 30.

2. The defendant's offense level total is 28.

3. The defendant's criminal history category is I.

4. The range of imprisonment under the Guidelines is seventy-eight (78) to ninety-seven (97) months, with three (3) to five (5) years of supervised release.

5. The Guidelines range for fines is $12,500 to $2,000,000.

6. There is an additional statutory special assessment of $50.00. 18 U.S.C. § 3013(a)(2)(A).

Absent a departure, the *Sentencing Guidelines* call for a substantial period of

---

1. Also made a part of the record in this proceeding are the following:
   A. Letter of 12/15/88 from Mrs. Sophia Katsis, Sioux City, Iowa, defendant's grandmother.
   B. Letter of 12/18/88 from Martha Bostinelos, Sioux City, Iowa, defendant's aunt.
   C. Letter of 12/14/88 from defendant's father.
   D. Letter of 12/20/88 from Hamilton Peterson, a police officer and friend of defendant.
   E. Report of City of Alexandria Detoxification Center verifying defendant's participation as a volunteer from 12/17/88 to present.
   F. Psychological Evaluation of Dr. Stanton E. Samenow, dated 1/4/89.
   G. Letter of 1/5/89 from LTC Gant, Commandant of Cadets at Wentworth Military Academy.

incarceration. Understandably, therefore, defendant seeks a departure from the applicable Guidelines pursuant to Section 5K1.1. The government supports the defendant's departure request. Indeed, the government has, in effect, moved the Court for a departure, noting:

> [Defendant] was instrumental in providing information to support a search warrant for the residence of a co-defendant.... The warrant resulted in the discovery of an arsenal of weapons, drug paraphernalia and subsequent arrest of his co-defendant ... for violation of the terms and conditions of his [co-defendant's] release.
>
> Further, [defendant] provided a full debriefing in anticipation of trial. His agreement and willingness to testify was certainly a factor in the subsequent pleas of his co-defendants. As a result of their pleas, the co-defendants have also agreed to cooperate with the United States.
>
> Certainly these efforts may be classified as substantial assistance to authorities as defined in the Sentencing Guidelines. Further, the United States Attorney's Office ... has determined that [defendant's] assistance qualifies him for a downward departure.

The Court agrees; the requirements for a departure under Section 5K1.1 are fully met here. Accordingly, the Court grants the parties' request for a departure and turns next to the question of the appropriate extent of the departure. In this connection, a threshold question is whether the mandatory minimum five-year period of incarceration applicable to the base offense, i.e., possession of 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841, is also applicable to a conviction of conspiracy to commit the same crime under 21 U.S.C. § 846. If so, the maximum departure would be limited; there could be no departure that would result in a period of incarceration of less than five years.

At first blush, there is an inviting symmetry to the notion that the mandatory minimum for the base offense should also apply to a conviction for conspiracy to commit the base offense. After all, essentially identical conduct is involved. The sole difference is that the defendant in the conspiracy context acts in concert with others rather than alone. On reflection, however, this inviting symmetry is ultimately unpersuasive against the force of statutory language and analogous Supreme Court authority. Analysis begins, as it must, with the statutory language.

Section 846 expressly provides that persons convicted of conspiracy (and attempts, as well) are "punishable by imprisonment or fine, or both, which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy." In sharp contrast to the explicit reference to a maximum term, no mention is made of a mandatory minimum term. Thus, while the maximum term is plainly carried over from the base offense to the conspiracy offense, the same cannot be said of the mandatory minimum term. For a court to read the mandatory minimum into the statute on the basis of logic or symmetry would amount to rewriting the statute, an impermissible judicial exercise. The omission from the statute is simply too significant to permit a court to supply it; to do so would be an exercise in amendment, not emendation.[2]

---

2. Persuasive, too, is the fact that where Congress intended mandatory minimum terms of imprisonment under 21 U.S.C. § 841(b) to apply to other sections of the Controlled Substances Act, it made its intent explicit. *See, e.g.,* 21 U.S.C. § 845b(b) which provides that, "[e]xcept to the extent a greater minimum sentence is otherwise provided, a term of imprisonment [for persons convicted] under this subsection shall not be less than one year." *See also* 21 U.S.C. § 845b(c) (one year minimum sentence for second offense); 21 U.S.C. § 845b(e) (no parole until minimum sentence has been served). These provisions militate against reading a mandatory minimum term into 21 U.S.C. § 846 for "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972) (quoted with approval in *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)). *See also J. Ray McDermott & Co., Inc. v. Vessel Morning Star,* 457 F.2d 815, 818 (5th Cir.), *cert.*

This is especially so in light of the telling absence of any supporting evidence of Congressional intent. The legislative history of the Anti–Drug Abuse Act of 1986 [3] provides no guidance on the issue. Like the statute, it, too, is silent on mandatory minimum penalties.

Yet another obstacle to reading the mandatory minimum into the conspiracy statute is the rule of lenity. This construction maxim holds that penal statutes are "strictly construed against the Government or parties seeking to exact criminal penalties and in favor of the persons on whom such penalties are sought to be imposed." 3 *Sutherland Statutory Construction* § 59.03, at 6–7 (4th ed.1974); *see also Rewis v. United States* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980).[4] Applied here, the rule of lenity militates strongly against reading the mandatory minimum penalty into the conspiracy statute. Essentially this result was reached by the Supreme Court in *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). There, Mr. Justice Blackmun, speaking for a majority of the Court, held that the "special parole terms" under 21 U.S.C. § 841(b) do not carry over to conspiracy and attempt offenses under 21 U.S.C. § 846. The latter provision is as silent on special parole terms as it is on

mandatory minimum prison terms. So, too, is the legislative history. *Bifulco*, then, is not significantly distinguishable.[5] Its rationale and result are dispositive, if not actually controlling. That rationale and result were stated as follows:

> This investigation into the meaning of § 406 [of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 846] ... yields the likely conclusion that Congress' failure specifically to authorize the imposition of special parole terms as punishment for those convicted of conspiracy was not a slip of the legislative pen, nor the result of inartful draftsmanship, but was a conscious and not irrational legislative choice. Our analysis reveals, at the least, a complete absence of an unambiguous legislative decision to authorize special parole terms as punishment for those convicted of drug conspiracies. Of course, to the extent that doubts remain, they must be resolved in accord with the rule of lenity. If our construction of Congress' intent ... clashes with present legislative expectations, there is a simple remedy—the insertion of a brief appropriate phrase, by amendment, into the present language of § 406.

447 U.S. at 400–401, 100 S.Ct. at 2258–59. The government accepts that *Bifulco* is dispositive here, as indeed it has done in at least one other context.[6]

---

denied sub nom. *Fish Meal Co. v. J. Ray McDermott & Co., Inc.*, 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972) ("Where Congress has carefully employed a term in one place but excluded it in another, it should not be implied where excluded."). Simply put, the express incorporation of Section 841's mandatory minimum term in portions of Section 845b, but not in Section 846, invites the inference that Congress did not intend the mandatory minimum terms to apply to Section 846 offenses.

3. Pub.L. No. 99–570, 100 Stat. 3207 (1986).

4. The absence of contrary legislative intent is important for it is well and sensibly settled that neither the rule of lenity nor any other canon of statutory construction may be applied so as to defeat the intent of Congress. *See, e.g., Liparota v. U.S.*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) ("rule of lenity is not to be applied where to do so would conflict with the implied or well expressed intent of Congress."); *Camp-*

bell v. *Wells Fargo, N.A.*, 781 F.2d 440, 442 (5th Cir.), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) (legislative intent controls over statutory construction maxim).

5. Section 846 explicitly refers to imprisonment terms, but not special parole terms. While this is a distinction, it is no reason to carry over only a mandatory minimum term.

6. The full text of the unpublished opinion in *United States v. Pearsall*, 826 F.2d 1065 (6th Cir.1987) is as follows:

> The defendant pleaded guilty to one count of conspiracy to distribute cocaine, 21 U.S.C. § 846, and was sentenced to five (5) years imprisonment plus four (4) years of supervised release. He appeals from the imposition of the four (4) year term. The government now moves to remand the case to the district court for resentencing on grounds that the mandatory minimum sentences and terms

For all these reasons, therefore, the Court holds that Section 841's mandatory minimum five year term does not carry over to Section 846, the conspiracy provision. If this holding is viewed as leading to illogical or untoward results,[7] Congress, the authors of this situation, have the power to effect a remedy.

■ In any event, the government further points out that 18 U.S.C. § 3553(e) empowers a sentencing court, on motion of the government, to impose a sentence below a mandatory minimum term where warranted by a defendant's cooperation with the authorities. Section 5K1.1 of the *Sentencing Guidelines*, issued pursuant to 28 U.S.C. § 994(n), effectively incorporates Section 3553(e) by allowing guidelines departures for defendants who have made "a good faith effort to provide substantial assistance." *Sentencing Guidelines* § 5K1.1. Thus, even assuming that the mandatory minimum term were carried over to Section 846, the Court would still be empowered to impose a sentence below the mandatory minimum where warranted by a defendant's cooperation.

■ Having concluded that Section 841's mandatory minimum imprisonment term is no bar to a departure below five years imprisonment, the Court turns next to consider whether the facts and circumstances warrant such a substantial departure. They do. Defendant's cooperation was, by all accounts, promptly forthcoming, wholehearted and central to obtaining convictions of his co-defendants. This factor, by itself, warrants the substantial departure adopted here. Moreover, on the basis of the PSI and the substantial additional material on

defendant submitted in aid of sentencing, the Court concludes that defendant's participation in the scheme which led to his conviction was an isolated incident of aberrant behavior. He is, unquestionably, seriously immature and lacking in direction. But, in the Court's view, the relatively lengthy period of incarceration called for in the Guidelines would be disproportionate and counterproductive in these circumstances. Defendant's statement of contrition at sentencing was as sincere and heartfelt as any heard by this Court. And his description of the havoc wreaked by drugs was more chilling than most. In sum, the goals of retribution, deterrence and rehabilitation are better served by a much briefer period of incarceration coupled with a substantial period of supervised release and community service. Accordingly, the Court concludes that the appropriate sentence for this member of the conspiracy[8] is fourteen months imprisonment followed by five years of supervised release, during which defendant must complete 300 hours of community service. In his oral statement at sentencing, defendant convincingly expressed a genuine and implacable hostility to drugs. Accordingly, effective discharge of his community service requirement might well include presentations by defendant to school children on the terrible effects and consequences of not saying "no."

The Court's sentence is set forth in the judgment and commitment order.

---

of supervised release required by the Anti-Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207 (1986) do not apply to convictions pursuant to 21 U.S.C. § 846. The defendant has informed the Court that he does not oppose the motion.

7. As noted, there is at least a lack of symmetry, if not logic, in having a five year mandatory minimum for a base offense, but not for a conspiracy to commit the base offense. This is especially true in connection with drug trafficking where, as a practical matter, essentially all offenses are the products of conspiracies. Conceivably, then, the anomaly of having mandato-

ry minimum terms for the base drug trafficking offense, but not the conspiracy, could lead defendants charged with both to strike a plea bargain on the basis of avoiding the mandatory minimum. It is not clear that this would comport with the Congressional purpose underlying the 1986 addition of a mandatory minimum term for certain drug trafficking offenses under Section 841.

8. It is worth noting that defendant's co-defendants, the two experienced traffickers, received prison terms of 108 months followed by five (5) years of supervised release.