UNITED STATES of America, Plaintiff,

v.

Scott DONATIU, Defendant.

No. 88 CR 441.

United States District Court,
N.D. Illinois, E.D.

Aug. 3, 1989.

the sale of the Marion stock.

Robert Cedar, Federal Defender Program, Chicago, Ill., for defendant.

Sharon E. Jones, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Defendant Scott Donatiu ("Donatiu") is before the Court for sentencing after pleading guilty without a plea agreement to a one-count information charging him with possession and intent to distribute 338 grams of a mixture containing cocaine in violation of 21 U.S.C. § 841(a)(1). In a Sentencing Memorandum filed in anticipation of his sentencing, Donatiu seeks a departure from the otherwise applicable sentencing guideline range of between 21 and 27 months. In connection with his request for departure, Donatiu raises several challenges to the constitutionality of the Sentencing Guidelines ("guidelines"). Specifically, Donatiu asks the Court to make the following alternative findings: (1) that § 5K1.1, the policy statement in the guidelines which governs departures for a defendant's "substantial assistance," on its face, violates due process; or (2) that § 5K1.1 violates due process in this case by requiring a government motion before a court may depart; or (3) that § 5K1.1 does not require a government motion before a court may consider a departure under the

section. For the reasons discussed below, Donatiu's request for a departure is denied.

### II. FACTS

There is little dispute among the parties with respect to the facts. Upon arriving from Florida at Midway Airport on May 20, 1988, Donatiu was stopped and questioned by DEA Task Force agents during a routine airport courier stop. Donatiu consented to a search of his carry-on luggage and the agents discovered a package wrapped in Christmas wrapping paper. Donatiu consented to the opening of the package and inside the package the agents discovered a tube stuffed with a plastic bag containing 338 grams of 97% pure cocaine. Once the cocaine was discovered, Donatiu admitted his knowledge of the cocaine and immediately agreed to cooperate with the DEA agents. He told the agents the name of his source, that his instructions were to deliver the package to someone at the Museum of Science and Industry in Chicago, and that he was to be paid $2,000 for this delivery. He agreed to cooperate with the government by making a telephone call to his source and completing the delivery as scheduled.

At the agent's suggestion, Donatiu telephoned his source and attempted to find out who he was supposed to meet and where the meeting was to take place. Through no fault of Donatiu's the government was not able to make the controlled delivery of the cocaine. Before Donatiu could reach his source by phone, the source had already learned that Donatiu had been arrested. When friends of Donatiu's in Chicago had called his girlfriend to tell her of his arrest, the source was at Donatiu's apartment, answered the phone, and learned of Donatiu's arrest.

### III. DISCUSSION

Donatiu urges the Court to depart from his applicable guidelines sentence based on two factors: (1) his "unparalleled" expression of candor and remorse and acceptance of responsibility; and (2) his efforts to "substantially assist" the government in the investigation and prosecution of others

associated with his offense. After a brief discussion of the general role of departures under the guidelines, the Court will address each of Donatiu's arguments in turn.

A. *Departures Generally Under the Guidelines*

The procedure for imposing a sentence under the guidelines is set forth in 18 U.S.C. § 3553. Section 3553(a) provides a laundry list of factors which a court must consider in determining the particular sentence to be imposed. These factors include, among others, the kinds of sentence and the applicable sentencing range established by the Commission as set forth in the guidelines [ (a)(4) ] as well as "any pertinent policy statement" issued by the Commission [ (a)(5) ]. Although certain factors in § 3553(a) would seem to grant broad discretionary powers to the sentencing judge, especially (a)(1), the nature and circumstances of the offense and the history and the individual characteristics of the defendant, and (a)(2)(A–D), the need for the sentence imposed to serve the traditional goals of punishment, deterrence, protection of the public and rehabilitation, § 3553(b) circumscribes the sentencing judge's discretion in deviating from the applicable guidelines range. Section 3553(b) explicitly states:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) [the applicable guidelines range] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2).

Section 3553(b) thus makes clear Congress' intent that departures under the guidelines were intended to be "quite rare," contemplated only in "those situations not addressed by the Commission in its guidelines, policy statements, and official commentary." *United States v. Justice*, 877 F.2d 664, 666 (8th Cir.1989) (LEXIS) (Genfed Library, Courts file). Where the applicable guidelines, specific offense characteristics, and adjustments do address a ground for departure, a departure may be warranted in the atypical situation where a defendant's conduct differs from the norm to an extent or to a degree which could not have been adequately considered by the Commission when formulating the guidelines. *See* Sentencing Guidelines, ch. 1, Part A, subd. 4(b) at 1.6. The Commission itself expressed its belief that "despite the court's legal freedom to depart from the guidelines, they will not do so very often." *Id.* at 1.7. *See also United States v. Nuno–Para*, 877 F.2d 1409, 1412 (9th Cir. 1989); *United States v. Uca*, 867 F.2d 783, 786 (3d Cir.1989) ("the Guidelines, commentaries and policy statements clearly indicate that departures should be rare").

1. Departures for Acceptance of Responsibility and Remorse

■ Donatiu urges the Court to depart from the applicable guidelines based on his "unparalleled" acceptance of responsibility and remorse. Donatiu points to the probation officer's comments in his presentence report attesting to his "refreshing" candor and honesty as support for his claim that his acceptance of responsibility is "unique." Moreover, Donatiu asks the Court to consider his profound sense of shame and embarassment over his conduct, exemplified by his inability to bring himself to tell his mother that he carried drugs, in making its decision to depart. Donatiu contends that the two-level reduction for acceptance of responsibility as set forth in § 3E1.1 of the guidelines "does not adequately reward a person who has demonstrated a far greater acceptance of responsibility and remorse than the average offender" and that he is entitled to a downward departure. Sen-

tencing Mem. at 13. The Court does not agree.

■ Section 3E1.1 of the guidelines, entitled "Acceptance of Responsibility", clearly addresses Donatiu's situation and rewards him for his prompt, voluntary admission of guilt and his candor in speaking with the authorities. At least three factors mentioned in paragraph (1) of the Application Notes to § 3E1.1 specifically apply to Donatiu:

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

Sentencing Guidelines, ch. 3, Part E—Acceptance of Responsibility, § 3E1.1 at 3.21. In light of these factors, Donatiu is entitled to a two-level reduction in his offense level. The nature of Donatiu's "acceptance of responsibility," however, particularly his promptness in admitting his guilt and the candor he expressed in his dealings with the authorities, were circumstances "adequately taken into consideration by the Sentencing Commission," and therefore cannot be deemed a basis for a departure under § 3553(b).[1]

2. **Substantial Assistance Departures under Section 5K1.1**

Section 5K1.1 of the guidelines is the policy statement within the guidelines which governs departures based on a defendant's "substantial assistance." Section 5K1.1 provides: *"Upon motion of the government* stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Sentencing Guidelines, ch. 5, Part K—Departures, § 5K1.1 at 5.35–5.36 (emphasis added). Donatiu challenges § 5K1.1 on many different grounds, each centering on the requirement that the government must bring a motion in order for a court to depart based on a defendant's substantial assistance, a motion which the government has steadfastly refused to bring in this case. Donatiu first argues that a court may depart from the applicable guidelines range even in the absence of a government motion. If the Court finds, however, that a government motion is a prerequisite to a "substantial assistance" departure, Donatiu contends that § 5K1.1 is invalid because it exceeds the mandate given to the Sentencing Commission under 28 U.S.C. § 994(n) and because § 5K1.1 violates due process, both on its face, and as applied to his case.

a) *Section 5K1.1's Requirement of a Government Motion*

■ In order to circumvent the clear mandate of § 5K1.1 that a motion must be brought by the government, Donatiu argues that the Court need not follow § 5K1.1 because it is a "non-binding" policy statement. Donatiu supports his argument by contrasting the statutory language of § 3553(b) which states that a court "shall *impose* " a sentence within the applicable guideline range with the lan-

---

**1.** Donatiu asks the Court to consider his profound sense of shame over his actions as a factor in the departure analysis separate and apart from his acceptance of responsibility. The Court believes that a defendant's shame is not worthy of separate or special consideration under the guidelines. In the "Background" section to the Commentary of § 3E1.1, the Commission recognized that "shame" is not a factor to be considered until a defendant demonstrates that his remorse is "sincere" by affirmatively demonstrating his "acceptance of responsibility." Sentencing Guidelines, ch. 3, Part E—Acceptance of Responsibility, § 3E1.1 at 3.22. Thus a defendant's remorse or sense of shame is accounted for in the "acceptance of responsibility" analysis. Even if a defendant's shame was not considered by the Commission, the Court doubts that the mere expression of "shame" alone would merit "special consideration" in the departure analysis. It is this Court's experience from its many pre-guidelines sentencings that most defendants are "sorry" and embarrassed for their actions. Absent some kind of affirmative action showing "acceptance of responsibility," it would be almost impossible for a Court to differentiate between those defendants who are sincerely sorry from those who are just sorry that they were caught.

guage in § 3553(a)(5) which states only that a court "shall *consider*" policy statements in imposing sentence. Thus, Donatiu argues that while district courts are mandated to *consider* and to *impose* a sentence within the sentencing guidelines, they are only mandated to *consider* policy statements. Sentencing Mem. at 17.

■ The Court agrees that policy statements under the guidelines generally are not binding on courts. However, in the context of departures under the guidelines which are governed by § 3553(b), the Court must follow § 5K1.1 even though it is described by the Commission as a "policy statement." As previously discussed, § 3553(b) requires a court to impose a sentence under the guidelines unless the Court finds a circumstance not adequately considered by the Sentencing Commission. Section 3553(b) further directs courts that they may only consider the guidelines, the policy statements, and official commentary in determining whether the Sentencing Commission adequately considered a circumstance for departure. If the Commission did consider the circumstance in a policy statement, as it clearly did with a defendant's "substantial assistance" in § 5K1.1, the court must follow § 5K1.1 in order to depart. *See United States v. Justice,* 877 F.2d at 666–667 ("Because the Commission has provided a policy statement relating to substantial assistance to authorities departure under § 3553(b) would be improper. Any departure for substantial assistance must be made, if at all, pursuant to § 5K1.1"). *See also United States v. Taylor,* 868 F.2d 125, 126 (5th Cir.1989) (describing § 5K1.1 as a "specific procedure" set forth in the guidelines "by which the

government can move for a defendant's cooperation as a mitigating circumstance").

In holding that a court must follow § 5K1.1 in departing from a guidelines sentence based on a defendant's substantial assistance, the court is necessarily holding that it may not depart unless the government first brings a motion. To accept Donatiu's argument that as a non-binding policy statement without the force of law, the court need only consider § 5K1.1 but need not follow it "to the letter" would open the door for a court to depart from the guidelines on its own motion or on the defendant's motion for a "substantial assistance" departure. Although one court has apparently endorsed this position, *see United States v. Amesquita–Padilla,* 691 F.Supp. 277 (W.D.Wash.1988) (holding that judges have the power to make their own decisions about rewarding cooperation after considering § 5K1.1), this Court does not. Granting such wide-ranging discretion to sentencing judges would circumvent the clear intent expressed by Congress in 18 U.S.C. § 3553(b) and by the Commission that departures under the guidelines are the rare exception rather than the rule.[2]

Two cases cited by Donatiu, *United States v. White,* 869 F.2d 822 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989) and *United States v. Justice, supra,* provide some support for defendant's position that a substantial assistance departure may be applied in the absence of a government motion, but both cases are distinguishable. In *White,* the issue facing the court was whether § 5K1.1 was inconsistent with Congress' directive to the Sentencing Commission in 28 U.S.C. § 994(n), an issue which this Court will

---

**2.** This Court was one of a number of courts in this district to hold the guidelines unconstitutional before the United States Supreme Court's decision in *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Court's decision to enforce § 5K1.1 to the letter is indicative of perhaps a more practical approach to guidelines questions in the post-*Mistretta* age, an approach advanced by Terence F. McCarthy, the Executive Director of the Federal Defender Program in the Northern District of Illinois:

The best way to draw attention to faulty legislation is to enforce to the letter. Though many individuals, our federal system of criminal justice and the taxpayers will suffer, this regretful suffering should cause a reconsideration of minimum mandatory sentencing. Federal Sentencing Reporter, February/March 1989 at 324. Although it is unclear whether Mr. McCarthy's comments were restricted to mandatory minimum sentencing statutes such as § 3553(e), the Court finds his analysis can easily be applied to sentencing generally under the guidelines.

address later in this opinion. The court held:

> § 5K1.1 is predicated on the reasonable assumption that the government is in the best position to supply the Court with an accurate report of the extent and effectiveness of defendant's assistance and that it would be the rarest of cases in which the government would be unwilling to recognize such assistance. This policy statement obviously does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize such substantial assistance.

869 F.2d at 829. It is important to note what the Fifth Circuit did and did not hold in *White*. The Court further held that § 5K1.1's requirement of a government motion did not conflict with Congress' directive in § 994(n). The Court held that § 5K1.1 was based on the "reasonable assumption" that the government was in the best position to gauge the extent and effectiveness of a defendant's cooperation, and that only in the "rarest" of cases would the government be unwilling to recognize such assistance. The Court's statement that a district court would not be precluded from entertaining a defendant's motion that the government is refusing to recognize such substantial assistance, however, is not an invitation to defendants to freewheelingly file motions for departure. Taken in context, it is merely a recognition that in the "rarest" of cases where the government refuses to file a § 5K1.1 despite indisputable evidence of substantial assistance on the part of the defendant, the defendant may bring the government's bad faith to the court's attention. What constitutes the "rare" case and what "remedy" the defendant is entitled to is not discussed in *White* and is presumably left up to the discretion of the court.

In *United States v. Justice, supra,* the Eighth Circuit held that § 5K1.1 provided a "clear mandate requiring a motion before a court may depart below the guidelines," and further recognized that "in order to nullify" this clear mandate, it would have

to hold either that § 5K1.1 was unconstitutional or that it was inconsistent with the Congressional directive in 28 U.S.C. § 994(n). 877 F.2d at 668. The court expressed its dissatisfaction with § 5K1.1 and its inclination to hold that a motion by the government may not be a prerequisite but declined to reach the issue:

> While we recognize that § 5K1.1 allows the district court, upon motion by the government, to depart below the guidelines to reward a defendant's cooperation, we are not positive that this provision, in the absence of a motion by the government, would divest a sentencing court of the authority to depart below the guidelines in recognition of a defendant's clearly established and recognized substantial assistance to the authorities. We believe that in an appropriate case the district court may be empowered to grant a departure notwithstanding the government's refusal to motion the sentencing court if the defendant can establish the fact of his substantial assistance to authorities as outlined above. Nevertheless, we are not prepared to decide this issue based on the record currently before us.

*Id.* at 668–669. By declining to reach the issue of whether § 5K1.1 is unconstitutional or in conflict with § 994(n), the Eighth Circuit left in place a scheme which *mandates* that a government motion be brought before a court may depart.

Although the dictum in *Justice* does not control or affect this Court's holding that § 5K1.1 requires a government motion, the Court finds the *Justice* opinion instructive in starting to answer the questions of what constitutes the "rare" case and what is the "remedy" for a defendant in the "rare" case left lingering after *White*. In *Justice*, 877 F.2d at 666–667, the Eighth Circuit cited *United States v. Coleman,* 707 F.Supp. 1101, 1103 (W.D.Mo.1989) as a case in which the court addressed the remedy issue. In *Coleman*, several defendants filed a motion with the district court requesting it to compel the government to file § 3553(e) [3] and § 5K1.1 departure mo-

---

3. The defendants in *Coleman* were subject to the

mandatory minimum sentencing provisions of

tions, or in the alternative to depart notwithstanding the government's failure to file such motions. In *Coleman*, the government entered a plea agreement with the defendants which provided that the government would advise the sentencing court of the nature, extent, and importance of their assistance to the authorities. The agreement, however, was silent as to the manner in which the government would bring this information to the court's attention. The government refused to file a § 5K1.1 motion and chose instead to discharge its obligations under the plea agreement by writing a letter to the court detailing each defendant's assistance. *Id.* at 1118–19. Two other facts also appeared to influence the judge's decision: (1) the prosecutor told counsel for at least one defendant that the letter was sufficient to enable a court to depart under the guidelines and cited to counsel a California case, which was later found to be non-existent, as precedent; and (2) the letter to the court clearly established the substantial assistance of defendants which included hours of debriefing with DEA agents and trial testimony against other defendants which led to their convictions. *Id.* at 1103, 1106. On the basis of all these factors, the district court held that the plea agreement was ambiguous, interpreted it against its drafter, the government, and treated the letters submitted by the government as a motion for departure under § 3553(e). *Id.* at 1119. In the unusual circumstances at issue in *Coleman*, where the government refused to bring a departure motion even though it acknowledged the defendant's substantial assistance, the remedy was to treat the government's letters as a motion for departure. *See also United States v. Campbell*, 704 F.Supp. 661, 663 (E.D.Va.1989) (court treats government filing detailing defendant's substantial assistance as a § 5K1.1 motion).

Another remedy fashioned by courts has been the specific enforcement of coopera-tion agreements or clauses in plea agreements which provide that the government will file a § 5K1.1 motion. *See United States v. Rexach*, 713 F.Supp. 126 (S.D.N.Y.1989); *United States v. Galan*, 1989 WL 63110 (S.D.N.Y. June 8, 1989) (No. 89 CR 198) (WESTLAW) (DCT Database). In *Rexach*, the defendant and the government signed a plea agreement which provided in pertinent part:

> If it is determined by this office that Domingo Rexach has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person ... this Office will file a motion ... pursuant to Section 5K1.1 ... advising the sentencing Judge of all relevant facts pertaining to that determination and requesting the Court to sentence Domingo Rexach in light of the factors set forth in Section 5K1.1(1)(1)–(5) ...

713 F.Supp. at 127–128. Rexach argued that he provided substantial assistance and asked the court to specifically enforce the plea agreement. *Id.* Applying traditional contract principles, the court held that its role was "limited to deciding whether the prosecutor has made its determination as to Mr. Rexach's cooperation in good faith." *Id.* at 128. Because there was no allegation that the prosecutor had acted in bad faith, the court held that the government did not breach the plea agreement and denied Rexach's motion for an order directing the prosecution to move for a departure. *Id.*

Similarly, the defendant in *Galan* moved to compel the government to make a motion for downward departure under § 3553(e) and § 5K1.1. 1989 WL 63110, at 2. The defendant signed a standard form cooperation agreement and the prosecutor determined, after meeting with the defendant, that the defendant had lied in making certain statements which arguably exculpated his codefendant. *Id.* Based on her

---

18 U.S.C. § 3553(e). The court held that it was unnecessary for the government to file two separate departure motions, one under § 3553(e) and one under § 5K1.1, in order to advise the court of a particular defendant's substantial assistance. 707 F.Supp. at 1119, 1120 n. 24. The court noted, however, that in a case in which the defendants were not subject to a mandatory minimum, "the government would need only to file a Section 5K1.1 motion in order to authorize a departure from the Guidelines." Implicit in this statement is the judge's belief that absent a § 5K1.1 motion, he would be powerless to depart.

evaluation that Galan had breached his co-operation agreement, the prosecutor determined that the government would not honor its promise to make a departure motion. *Id.* Unlike the *Rexach* court, however, the court ordered the government to "expand the record upon whether it made its adverse determination considering Galan's assistance in good faith." *Id.* The court directed the government to file an affidavit containing "a detailed statement of any assistance actually rendered by Galan to the government" including information such as "what use the government has made or intends to make out of any information furnished" and a statement detailing "the identity and substance of the statements of any witnesses upon whom the government relies in contending that Galan made false statements" together with any copies of these statements if they were written and any notes of the prosecutor or other government agents of these interviews. *Id.* at 3. The court agreed "to examine these documents in camera to determine whether there is any basis to conclude, in the totality of circumstances, the government acted in bad faith in refusing to make a motion in Galan's behalf under the guidelines or the statute." *Id.*

■ The Court has cited *Coleman, Rexach,* and *Galan* as examples of the circumstances in which courts have entertained a defendant's showing that the government has acted in bad faith in refusing to move for a departure and the remedies which courts have fashioned in these circumstances, and does not necessarily endorse the positions taken by the courts on these issues. The "rare" circumstances and remedies contemplated by these courts include the specific enforcement of a government promise to move for a departure in the situation where the government has acted in "bad faith", or treatment of a government filing which describes in detail the nature, extent, and effectiveness of a defendant's substantial assistance as a § 5K1.1 motion in the circumstance where

the government concedes the defendant's substantial assistance yet refuses to file such a motion. Neither of these circumstances is present in the instant case. The defendant does not allege that the government ever promised to file a § 5K1.1 motion; indeed, it is unlikely that such a promise ever was made given that there is no plea agreement and that most of defendant's alleged substantial assistance occurred immediately after his arrest and prior to any plea negotiations. Nor is this a situation where the government has virtually admitted that Donatiu provided substantial assistance in the prosecution of other persons involved in Donatiu's offense; the government has argued that while Donatiu cooperated in good faith, his efforts were largely unhelpful and in fact, pale in comparison to the efforts of others, on whose behalf the government has filed § 5K1.1 motions in this District.

■ Donatiu makes a strong argument based on the language of § 5K1.1 that all that he needs to do to qualify for a government motion is to "make a good faith effort to provide substantial assistance in the investigation or prosecution of another who has committed an offense." *See Justice, supra,* 877 F.2d at 666. In this regard, the government's concession in its reply that Donatiu cooperated with the "best intentions" and made "good faith efforts" (Government Reply at 10) could be analogized to the government filings in *Coleman* and *Campbell* and treated as a § 5K1.1 motion. However, the extent, nature and significance of efforts of the defendants in those cases, uncontested by the government, greatly eclipse the contested good faith efforts of Donatiu here. Although there may be circumstances where the district court is empowered to grant a departure notwithstanding the government's refusal to file a 5K1.1 motion based on a defendant's "good faith efforts to provide substantial assistance," these circumstances are not present here.[4]

---

4. Were it necessary for the Court to determine whether Donatiu was entitled to a departure based on his good faith efforts to provide substantial assistance, the Court would be inclined

not to grant Donatiu a departure based on his efforts here. The record reveals that Donatiu provided the government with little more than the name of his source. Although Donatiu

### b) *Invalidity of § 5K1.1 on Statutory Grounds*

■ In 28 U.S.C. § 994, Congress set forth the duties of the Sentencing Commission. Paragraph (n) of that section provides, in pertinent part: "The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C. § 994(n). Donatiu argues that the Commission failed to implement this statutory directive by drafting a policy statement, § 5K1.1, which imposes the additional requirement that a substantial assistance motion be brought by the government. Donatiu argues that by imposing this additional requirement, the Commission substituted a policy that substantial assistance departures will be "rarely appropriate" in place of the Congressional directive that such departures be "generally appropriate."

The two courts of appeal that have addressed this issue have rejected Donatiu's argument. *United States v. Ayarza,* 874 F.2d 647, 653 n. 2 (9th Cir.1989), *United States v. White,* 869 F.2d 822, 829 (5th Cir.1989). In *Ayarza,* the Ninth Circuit held that "the Sentencing Commission did not exceed its authority in drafting such a requirement in view of the fact that Congress itself drafted section 3553 the same way." 874 F.2d at 653 n. 2. In addition to § 3553(e), which allows substantial assist-

ance departures from mandatory minimum sentences only upon government motion, the Commission could have looked to Fed. R.Crim.P. 35(b), which also requires a government motion in order for a defendant to be afforded a reduction in sentence based on substantial assistance. By including the requirement of a government motion in § 5K1.1, the Commission merely made § 5K1.1 consistent with a statutory scheme already in place.[5] Accordingly, the Court holds that there is no inconsistency between 28 U.S.C. § 994(n) and § 5K1.1.

### B. *Constitutional Attacks on § 5K1.1 on Due Process Grounds*

#### 1. Facial Challenge to § 5K1.1

■ Donatiu argues that § 5K1.1 violates due process, on its face, for two reasons: (1) it shifts sentencing authority to the prosecution by allowing prosecutors to decide his sentence by simply refusing to make a motion; and (2) it deprives a defendant of the meaningful opportunity to be heard by preventing a judge from considering all relevant evidence in determining an appropriate sentence. The Court finds neither argument persuasive.

Initially, the Court notes that Donatiu has greatly overstated his case. In rejecting similar constitutional attacks on § 3553(e)'s requirement of a government motion, two courts of appeals have correctly held that the requirement does not shift sentencing authority to prosecutors. *United States v. Huerta,* 878 F.2d 89, 91–92 (2d Cir.1989); *United States v. Musser,* 856

---

agreed to phone his source and later met with the government to provide more details, the government contends that "nothing of value was obtained by defendant's attempted cooperation other than his guilty plea." Government Reply at 9. Donatiu's argument that the government must give its reasons for not indicting [the source] "asks the Court to intrude upon an area of prosecutorial discretion—charging decisions—which is exclusively within the prosecutor's domain, *see United States v. Batchfelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *United States v. Schwartz,* 787 F.2d 257, 266 (7th Cir.1988) ("[t]he question whether to proceed with a prosecution is for the Executive Branch and the grand jury alone"), and must be rejected. Based on the record before the Court, and applying the factors set out in § 5K1.1(a) to be considered by a court in

determining whether a reduction is appropriate, it is clear that neither "the significance and usefulness" of Donatiu's assistance nor the "nature and extent" of his assistance would justify a departure under the guidelines. *See,* Sentencing Guidelines, ch. 5, Part K—Departures, § 5K1.1(a)(1), (a)(3) at 5.35.

5. Moreover, Donatiu's argument that Congress intended for "substantial assistance" departures to be "generally appropriate" must be rejected in light of § 3553(b). As discussed earlier in this opinion, Congress' clear intent in drafting § 3553(b), which specifies the procedure for departures under the guidelines, was to make departures the limited exception rather than the general rule.

F.2d 1484, 1487 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989). The only authority delegated to the prosecutor by § 5K1.1 is the authority to *move* the district court for a downward reduction based on a defendant's substantial assistance. *See Musser,* 856 F.2d at 1487 (emphasis in original). Although the decision whether to file a § 5K1.1 motion affects a defendant's eligibility to be considered for a sentence below the guidelines range, "the *power* to decide the motion and to pronounce however, remains with the court." *Huerta,* 878 F.2d at 92 (emphasis added).

More fundamentally, both of Donatiu's due process challenges rest on the erroneous premise that the judicial function of sentencing and judicial discretion cannot be circumscribed. Most recently, in *Mistretta v. U.S.,* —— U.S. ——, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989), the Supreme Court commented that Congress has the power to confine the scope of judicial discretion. Moreover, mandatory sentencing acts which clearly curb judicial discretion at sentencing have been consistently upheld by courts as long as they are rationally-based. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986) (upholding Pennsylvania's Mandatory Minimum Sentencing Act); *United States v. Pineda,* 847 F.2d 64, 65 (2d Cir. 1985) (upholding mandatory minimum sentence provisions of 21 U.S.C. § 841(b)(1)); *United States v. Goodface,* 835 F.2d 1233 (8th Cir.1987) (upholding mandatory sentencing provision of 18 U.S.C. § 924(c)). Section 5K1.1's requirement of a government motion is based on the reasonable and rational assumption that the government is in the best position to assess and report to the court the nature, extent, and effectiveness of a defendant's substantial assistance. *United States v. White,* 869 F.2d 822, 829 (5th Cir.1989). *See also Huerta,* 878 F.2d at 91 ("we believe that whether a

defendant's cooperation has risen to the level of substantial assistance to the government is self-evidently a question that the prosecution is uniquely fit to resolve"); *Ayarza,* 874 F.2d at 653 ("it is rational for Congress to lodge some sentencing discretion in the prosecutor, the only individual who knows whether a defendant's cooperation has been helpful").

■ Finally, the Court views Donatiu's argument that § 5K1.1 denies him a meaningful opportunity to be heard to be merely a variant of the due process claim for "individualized sentencing" which this circuit and other circuits have soundly rejected. *See, e.g., United States v. Pinto,* 875 F.2d 143 (7th Cir.1989); *United States v. Brittman,* 872 F.2d 827 (8th Cir.1989); *United States v. Vizcaino,* 870 F.2d 52 (2d Cir. 1989); *United States v. Frank,* 864 F.2d 992, 1010 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989). Under the Sentencing Guidelines, "the defendant, as always, has the right to appear, to offer evidence, and to challenge the Government's evidence." *Vizcaino,* 870 F.2d at 56. The only difference under the guidelines is that the trial court's discretion to consider certain information relating to a defendant's substantial assistance and to use such information as a basis for departure has been somewhat curtailed. The Court has already held that § 5K1.1's limitation on the judge's discretion is rationally-based and survives Donatiu's due process challenge.[6]

2. Due Process Challenge to Government's Application of § 5K1.1

■ Donatiu also contends that the government's conduct in refusing to move for a substantial assistance departure *in his case* violates "due process." To prevail on his claim, Donatiu must demonstrate that the government's conduct in this case "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209,

---

6. It is also an overstatement to say that information relating to a defendant's substantial assistance is never considered by the Court if the government refuses to file a § 5K1.1 motion. There is much overlap between § 3E1.1 ("Acceptance of Responsibility") and § 5K1.1 ("Sub-

stantial Assistance to Authorities") and information relating to a defendant's substantial assistance may be considered by a court in determining whether to apply a two level sentencing reduction.

96 L.Ed. 183 (1952), or is so outrageous that it violates "fundamental fairness [and is] shocking to the universal sense of justice." *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 236, 80 S.Ct. 297, 298, 4 L.Ed.2d 268 (1960). *See also United States v. Severich,* 676 F.Supp. 1209, 1213 (S.D.Fla.1988), *aff'd,* 872 F.2d 434 (11th Cir. 1989).

Donatiu argues that the government's conduct in refusing to certify his substantial assistance to the Court was outrageous and in "bad faith." In order to bring this "bad faith" to the Court's attention, Donatiu asks the Court for permission to allow him to disclose specifics about the plea negotiations with the government. Donatiu recognizes that there is a long-standing tradition in this district against such disclosures, but argues that breach of this tradition is necessary in order to show how the government has violated his due process rights. In support of his request to file an affidavit describing the outrageous conduct in plea negotiations, Donatiu cites to *United States v. Coleman, supra,* and *United States v. Galan, supra,* two cases discussed at length earlier in this opinion.

*Coleman* and *Galan* are both distinguishable from the instant case. In *Galan,* the question of "bad faith" was a necessary inquiry to determine whether the government had breached a specific condition of its *plea agreement,* wherein the government had agreed to move for a downward departure if the defendant provided "substantial assistance." If the court determined that the government had acted in "bad faith," the defendant would have been entitled to specific enforcement of the condition. Similarly, the disclosure of plea negotiations in *Coleman* was critical to explore statements made by the prosecutor to defense counsel that letters sent by her office to the court advising the court of the defendant's assistance and cooperation were the legal equivalent of a § 3553(e) departure motion. 707 F.Supp. at 1103. Disclosure of plea negotiations through affidavits was necessary for the reason that the circumstances of the negotiations "related directly to the question of

whether the plea agreements must be held to be ambiguous." *Id.* at 1108. In the instant case, unlike *Coleman* and *Galan,* there is no plea agreement to specifically enforce and Donatiu does not contend that any promises regarding the defendant's substantial assistance were made or even that any such oral promises, absent a written plea agreement, would be enforceable. Under these circumstances, the Court does not believe that a "battle of the affidavits" on the question of the government's bad faith is necessary.

Moreover, unlike *Coleman,* the Court here is not faced with a situation where the defendant's substantial assistance is beyond dispute. In *Coleman,* the prosecutor sent letters to the court outlining the nature, extent, and importance of the defendants' assistance and describing such assistance in "glowing" terms. 707 F.Supp. at 1108. The defendants in the *Coleman* case met on several occasions with various federal, state and local authorities and "provided a wealth of information regarding the illegal drug activities of Haynes [the drug kingpin] spanning the course of many years." *Id.* at 1106. Moreover, each of the defendants testified for the government against Haynes at trial and their testimony was significant in leading to Haynes' conviction on six of nine charges, including conspiracy and distribution counts which involved all of the defendants. *Id.* Donatiu's efforts to provide substantial assistance simply do not measure up to the defendants' efforts in *Coleman.* Disclosure of the plea negotiations in the instant case will not alter the nature and extent of Donatiu's efforts to provide substantial assistance. In denying Donatiu's request to file an affidavit, the Court does not hold that a defense counsel affidavit disclosing plea negotiations would never be appropriate; the Court only holds that the circumstances in this case do not warrant the breach of this District's longstanding policy against such disclosures.

## IV. CONCLUSION

For all the reasons discussed above, Donatiu's motion for a downward departure

from the applicable sentencing guideline range is denied.